Decided March 26th, 1895.)

---

# THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* RICHARD W. CAIN.

*Arrest Without Warrant for Breach of the Peace on Railroad Train. —Evidence.—Damages.—Action for False Arrest.—Special Findings of Fact.—When Arrest may be Made Without a Warrant.*

Plaintiff, while a passenger on defendant's train, was intoxicated and guilty of a flagrant and continuous breach of the peace. Upon the arrival of the train at a station, the conductor caused plaintiff to be arrested without a warrant, by a police officer, being the first officer whom the conductor saw, and taken before a magistrate, by whom a fine was imposed. In an action for false imprisonment against the railroad company, *Held*, that under these circumstances the arrest was lawful.

The right to make the arrest depended upon whether the plaintiff was in fact guilty of a breach of the peace, and not upon whether he was so charged by the conductor.

If the plaintiff had in fact not been guilty of a breach of the peace, the defendant would be liable for the act of the conductor in ordering his arrest at the railway station for such alleged cause, because the plaintiff while there was still a passenger and entitled to protection against the illegal acts of defendant's employees.

If a felony or breach of the peace has in fact been committed by the person arrested, the arrest may be justified by any person without warrant. And in the above case, the act of the conductor in telegraphing for a policeman and, within a short space of time thereafter, handing plaintiff over to the officer, was in no respect different from a formal arrest of the plaintiff by the conductor in the midst of

88        B. & O. R. R. CO. vs. CAIN.

Statement of the Case.                    [81

the riot and disorder, and the prompt delivery of him afterwards to an officer.

A person, other than an officer, may take into custody, without warrant, one who in his presence is guilty of an affray or a breach of the peace. And such person may also arrest the affrayer after the actual violence is over, but whilst he shows a disposition to renew it.

Where incompetent evidence to prove a particular fact has been improperly admitted, the judgment will not be reversed if the same fact has been subsequently proved by competent evidence.

In an action to recover damages for false imprisonment, a prayer instructing the jury that if they find for the plaintiff, "they are at liberty to take into consideration all the circumstances attending the alleged arrest, the indignity to the plaintiff, his mental and bodily sufferings incident to the act, and award such damages as they may believe will compensate plaintiff for the wrongful act of the defendant," states correctly the measure of damages.

Where the Court is asked, before the arguments begin, to submit to the jury special interrogatories under the Act of 1894, ch. 185, and the interrogatories submit material questions of fact, the request should be granted.

Appeal from the Circuit Court for Howard County. At the trial below, the evidence produced on the part of the plaintiff was to the effect that he, together with J. W., Robert and J. W. C. Watkins, boarded defendant's train at Washington Grove camp-meeting to go to Washington; that R. Watkins, who was sitting by plaintiff, had a stump of a cigar in his hand, and, upon being accused by the conductor of smoking, denied that he was smoking, and threw the cigar out of the window; that Watkins and the conductor had a verbal altercation on the subject, and when the conductor threatened to put him off the train, plaintiff told the conductor that he would go too if Watkins was put off for nothing; that when plaintiff stepped from the car in Washington, the conductor pointed out him and one of the Watkins men to a police officer, saying, "These are the men;" that the officer arrested and took them to a police station, where they were detained fifteen or twenty minutes and fined five dollars each. Plaintiff testified that he was not drunk or under the influence of liquor, but that

he had had two drinks of whiskey before getting on the cars, and took one drink on the train. The three Watkins' also testified that plaintiff was not drunk.

On the part of the defendant, four witnesses testified that plaintiff and his companions were drunk and disorderly at the camp-meeting grounds, before getting on the train. The conductor testified that plaintiff and his three companions entered a ladies' car; that they were all drunk and disorderly and were using profane language; that one of them was smoking; that he saw them drink whiskey twice on the train; that he endeavored to quiet them, without avail, and requested them to go into the smoking car, which they refused to do; that complaint of their conduct was made by the passengers, and that he was obliged to direct other ladies who got on the train to go into the forward car; that he did not undertake to put them off the train, because there were four of them together, and he did not think himself able to do so after plaintiff said that if he undertook to put them off he would have to go too. Passengers on the train gave evidence to the same effect, and the policeman who arrested plaintiff, and the clerk at the station house in Washington testified that plaintiff was under the influence of liquor when brought there. The policeman testified that he made the arrest without warrant, it being the practice in Washington to arrest on complaint and carry the complaining witness to the station house, where he prefers the charge.

The plaintiff offered the following prayers:

*Plaintiff's First Prayer.*—The plaintiff, by his counsel, prays the Court to instruct the jury, that if the jury shall believe from all the evidence that plaintiff was, on the 21st of August, 1892, a passenger upon defendant's cars from Washington Grove camp, in Montgomery County, Maryland, to Washington City; that he paid and defendant accepted his fare as such; that upon plaintiff's arrival in Washington City and immediately upon the plaintiff's leaving the cars of the defendant, and while still in the depot and upon the premises of the defendant, and before he had

opportunity to leave said depot and premises of the defendant in Washington, defendant's conductor, Gaither, in charge of the train upon which plaintiff was, if the jury shall find that Gaither was a conductor of defendant's, caused the arrest of plaintiff in the manner as mentioned in the testimony, at Washington City, in the District of Columbia, and that the plaintiff was at that time conducting himself in a reasonably orderly and peaceable manner; that such arrest was made without a warrant, and plaintiff was taken up to a station house in Washington City, and detained until he deposited five dollars as his security for his appearance on the next morning, and that such arrest was made upon the allegation of drunken and disorderly conduct on the part of plaintiff whilst on the cars of defendant on the occasion mentioned, that then such conduct on part of defendant's agents was wrongful and illegal and defendant is responsible for the same, and the verdict of the jury must be for plaintiff.   (Granted.)

*Plaintiff's Second Prayer.*—The plaintiff, by his counsel, prays the Court to instruct the jury, that if they shall find a verdict for the plaintiff, they are at liberty to take into consideration all the circumstances attending the alleged arrest of the plaintiff, the indignity to plaintiff, his mental and bodily sufferings incident to the act, and award such damages as they may believe will compensate plaintiff for the wrongful act of the defendant.   (Granted.)

And the defendant offered the nine following prayers, and also the following special exception to the granting of the plaintiff's first prayer:

*Defendant's First Prayer.*—The defendant prays the Court to instruct the jury that there has been no evidence offered in this case legally sufficient to show that the acts complained of by the plaintiff were comitted by the defendant or its duly authorized agent or agents, or that it has ever ratified said acts, and the verdict of the jury must therefore be for the defendant.   (Rejected.)

*Defendant's Second Prayer.*—The defendant prays the

Court to instruct the jury that it was the duty of the plaintiff to behave in a quiet and orderly manner while a passenger on the train of the defendant, and that it was the duty of the conductor to maintain order on the said train, and if the plaintiff was acting in a disorderly manner on said train the conductor could eject him from the train; and if the jury find that the plaintiff, while a passenger on said train, was acting in a disorderly manner and was threatened with expulsiom from the train by the said conductor, and that on account of the companionship of the plaintiff with other persons, who were also disorderly and riotous, the conductor could not properly make the attempt to expel the plaintiff from the train, as the plaintiff and his companions stated that they would resist any attempt to expel them from the train, and that the disorderly conduct of the plaintiff continued up to the time he left the cars in the depot of the defendant at Washington; that then the conductor was justified in pointing out said plaintiff to any police officer who might be present when said plaintiff left the cars and requesting his arrest upon the charge of disorderly conduct, and for this arrest the defendant would not be liable; and if the jury further find, that upon the arrival of the train in the Washington depot, the conductor did point out the plaintiff to a police officer and request his arrest upon the charge of disorderly conduct, the verdict of the jury must be for the defendant.    (Rejected.)

*Defendant's Third Prayer.*—The defendant prays the Court to instruct the jury that if the jury find that the plaintiff, when he arrived in the Washington station, was acting in an intoxicated and disorderly manner, that then the conductor was justified in requesting the police officer, who was present, to arrest him at once, without a warrant, on the charge of disorderly conduct; and for this arrest the defendant is not liable, and the verdict of the jury must be for the defendant.    (Rejected.)

*Defendant's Fourth Prayer.*—The defendant prays the Court to instruct the jury, that there is no evidence in this

case legally sufficient to show that the defendant violated any of the plaintiff's rights as a passenger until the conductor directed the arrest of the plaintiff in the Washington depot; and if the jury find that the plaintiff, at the time he was arrested in the Washington depot, was intoxicated and disorderly, that then his arrest at the direction of the conductor was warranted by the condition and conduct of the plaintiff at that time, and the verdict of the jury must be for the defendant.    (Rejected.)

*Defendant's Fifth Prayer.*—The defendant prays the Court to instruct the jury, that it was the duty of the plaintiff to behave in a quiet and orderly manner while a passenger on the train of the defendant, and that it was the duty of the conductor to maintain order on said train, and if the plaintiff was acting in a disorderly manner on said train, the conductor could eject him from said train; and if the jury find that the plaintiff, while a passenger on said train, was acting in a disorderly manner and was threatened with expulsion from said train by the conductor, and that on account of the companionship of the plaintiff, with other persons, who were also disorderly and riotous, the conductor could not properly make the attempt to expel the plaintiff from the train, as the plaintiff and his companions stated that they would resist any attempt to expel them from the train, that then the conductor was justified in requesting the first police officer whom he could find to arrest the plaintiff; and if the jury further find that the police officer at the Washington depot was the first police officer the conductor saw, and that the conductor used due diligence in procuring a police officer, and that the conductor directed the police officer to arrest the plaintiff for said disorderly conduct, that the defendant is not liable for this arrest, and the verdict of the jury must be for the defendant.    (Rejected.)

*Defendant's Sixth Prayer.*—The defendant prays the Court to instruct the jury, that in considering the question whether or not the plaintiff's rights as a passenger were violated, only the action of the conductor in pointing out the plain-

tiff in the Washington depot, and requesting his arrest on the charge of disorderly conduct, can be considered, there being no evidence in this case legally sufficient to show that the plaintiff's rights, as a passenger, were violated in any other manner.   (Granted.)

*Defendant's Seventh Prayer.*—The defendant prays the Court to instruct the jury, that if the jury find that the plaintiff, when he was on the train coming from Washington Grove to Washington, and when he arrived in the Washington station, was acting in an intoxicated and disorderly manner, that then the conduct of the plaintiff justified the conductor in requesting the police officer, who was present, to arrest him at once, without a warrant, on the charge of disorderly conduct; and for this arrest the defendant is not liable, and the verdict of the jury must be for the defendant.   (Rejected.)

*Defendant's Eighth Prayer.*—The defendant, by its counsel, prays the Court to instruct the jury, that if under the pleading and evidence in this cause, the jury shall believe that the plaintiff was a passenger on one of the trains of cars of the defendant on the morning of August 21st, 1892, and that while on said train plaintiff and his companions were charged by the conductor of said train with being disorderly thereon; and further, that the conductor threatened to put one of the companions of the plaintiff off said train, whereupon the said plaintiff threatened to put conductor off too; that the conductor then told plaintiff and his companions that he would have them arrested when the train reached Washington; that the conductor telegraphed from Forest Glen to Washington, and that upon the arrival of said train at Washington it was met by a policeman; that as plaintiff and his companions stepped from said train on the platform of the defendant's depot in Washington, conductor said to a policeman (pointing out to him the plaintiff and his companions), " Those are the men that I had reference to," whereupon said policeman arrested the said plaintiff and took him to a station house, that then there is no

94        B. & O. R. R. CO. vs. CAIN.

Statement of the Case.        [81

evidence in this case legally sufficient to charge the defendant with said arrest, and the verdict of the jury must be for the defendant, even though the jury shall find that the conductor accompanied the said plaintiff and police officer to the station house in Washington, and there preferred charges against said plaintiff of being drunk and disorderly on his train.   (Rejected.)

*Defendant's Ninth Prayer.*—The defendant, by its counsel, prays the Court to instruct the jury, that if from the pleadings and evidence in the cause they believe that the plaintiff was a passenger on one of the trains of cars of the defendant on the morning of Aug. 21st, 1892, as testified to by the witnesses ; that the said plaintiff was drunk and disorderly while on said trains of cars ; that upon the arrival of said train at Washington, the conductor pointed out the said plaintiff to the officer Howe, and requested him to arrest plaintiff; that Howe then placed the said plaintiff under arrest, and the said conductor accompanied the officer and said plaintiff to the police station, and there preferred charges against the plaintiff, that then this is not an illegal arrest by the defendant, and the verdict of the jury must be for the defendant.   (Rejected.)

*Defendant's Special Exceptions.*—The defendant excepts especially to the granting of the plaintiff's first prayer, because there has been no evidence offered in this case legally sufficient to show that any authorized agent or agents of the defendant caused the said arrest of the plaintiff, or that the defendant ever ratified said arrest.  (Rejected.)

The Court below (JONES, J.), granted the plaintiff's prayers, and refused all of the defendant's prayers, except the sixth, which it granted.   And to this action of the Court the defendant's third bill of exceptions was taken.

The fourth exception was taken to the refusal of the Court to submit the following special interrogatories to the jury :

1st. Did the defendant ever expressly authorize the conductor to arrest persons who were disorderly on his train?

2nd. Did the defendant ever ratify the arrest of the plaintiff by the order of the conductor?

3rd. Did the plaintiff continue in an intoxicated condition from the time he boarded the train until he alighted from the train at Washington?

4th. Was the plaintiff drunk and disorderly while a pas-senger on the train of the defendant?

5th. Was the conductor anxious to eject the plaintiff from the train and was he able to do it?

6th. Was it one of the duties or powers of the conductor to order the arrest of the plaintiff in Washington? (Refused.)

The first exception was taken to the refusal of the Court to exclude the testimony of Watkins, to the effect that he heard the police officer who arrested the plaintiff say that he had no warrant. The second exception was taken to the refusal of the Court, at the close of plaintiff's evidence, to grant two prayers offered by the defendant, the first of which is the same as the defendant's first prayer as above set forth; and the second of which was to the effect that there being no evidence that the plaintiff was illegally arrested without warrant, the verdict must be for the defendant.

The jury returned a verdict for the plaintiff for $758, and from the judgment thereon the defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*W. Irvine Cross* and *Geo. Dobbin Penniman* (with whom were *John K. Cowen* and *J. S. Newman* on the brief), for the appellant, cited: 3 *Black. Com.* 128; *Kane v. State,* 70 Md. 551; *Deitrick* v. *Ry. Co.,* 58 Md. 347; *Vicksburg, etc., Co.* v. *O'Brien,* 119 U. S. 97; *Carter* v. *Howe Machine Co.,* 51 Md. 290; *Tolchester Beach Co.* v. *Steinmeier,* 72 Md. 313; *Nat. Bank* v. *Baker,* 77 Md. 462; *Central Ry.* v. *Brewer,* 78 Md. 394; *Allen* v. *London, &c., Co., L. R.* 6 Q. B. 65; *Poulton* v. *London, &c., Co., L. R.* 2 Q. B. 534;

*Roe* v. *Ry. Co.*, 7 Exch. 36; *Ry. Co.* v. *Brown*, 6 Exch. 314: *Taafe* v. *Slevin*, 11 Mo. App. 514.

*Alexander Kilgour* (with whom was *Joseph D. McGuire* on the brief), for the appellee, cited: *Ry. Co.* v. *Buck*, 116 Ind. 566; *Toledo, &c., Co.* v. *Goddard*, 25 Ind. 191; *Greenleaf on Evi.*, sec. 108; *Phillips on Evi.*, 231; *Lung* v. *Tyngborough*, 9 Cush. 37; *Day* v. *Gorsuch*, 4 Md. 267; *Ry. Co.* v. *Boucher*, 27 Md. 277; *Weed* v. *Panama, &c., Co.* 17 N. Y. 362; *Cooley on Torts*, 175; *B. & O. Co.* v. *State*, 60 Md. 449; *Grendard* v. *Ry.* 36 Wis. 657; *Goddard* v. *Grand Trunk Ry.*, 57 Me. 202; *Stewart* v. *Brooklyn, &c., Co.*, 90 N. Y. 588; *Mulligan* v. *N. Y., etc., Co.* 129 N. Y. 506.

McSHERRY, J., delivered the opinion of the Court.

This is an action of trespass for false imprisonment. The declaration alleges in substance that the plaintiff was a passenger upon one of the cars of the defendant; that he was received as such passenger at Washington Grove station for the purpose of being carried from that place to Washington City, and that it thereupon became the duty of the defendant to carry the plaintiff safely to his destination; yet the defendant did not carry the plaintiff safely to Washington, but instead thereof, when the car conveying the plaintiff reached the depot of the defendant in said city, the defendant, by its agents and servants, assaulted and beat the plaintiff, and forced him to go from said car and depot into the public street, and gave him into the custody of a police officer, who took him to a police station, and caused the plaintiff to be there imprisoned, without any probable cause, for the space of two hours; whereby he was greatly bruised, hurt and injured. The defendant pleaded not guilty. During the progress of the trial, which resulted in a verdict and judgment for the plaintiff, four exceptions were reserved and the defendant then took the pending appeal.

There is, as might be expected, and as is usual in cases of this character, some diametrically conflicting testimony respecting a portion of the material facts; but only so much

of this as is necessary to clearly present the legal principles involved need be alluded to or stated.

It is not disputed by either side, that early on Sunday morning, August the twenty-first, 1892, the plaintiff and three companions drove to a camp-meeting held at Washington Grove, in Montgomery County, and that shortly after reaching the ground they, together with several others, went to the railroad station nearby, and the four, namely, the plaintiff and three others by the name of Watkins, took passage on the cars of the defendant for the city of Washington, in the District of Columbia. They entered the ladies' car, and from this point the conflicting statements of the witnesses begin. According to the plaintiff's evidence, these four parties demeaned themselves in the car with perfect propriety until the conductor charged one of them, Robert Watkins, with smoking. Watkins denied the accusation and some words followed, whereupon the conductor threatened to put Watkins off the train. The plaintiff then told the conductor that he, the conductor, would go off too if he put Watkins off for nothing. After further words the conductor said he would have the party arrested when they got to Washington, and just as the plaintiff stepped off the train in the depot at Washington he was arrested by a police officer, to whom the conductor, then standing by and pointing to the plaintiff and the elder Watkins, said, " These are the men." They were taken to the police station, and after having given their watches and effects as bail, and after having been in custody fifteen or twenty minutes, they were released. The conductor appeared against them at the station house. The plaintiff himself testified that " the police fined them five dollars apiece, and he left his watch as security, and afterwards produced the money and got the watch." Upon the part of the defendant, it was proved by a number of witnesses, some of whom were passengers on the same train of cars, that the conduct of the plaintiff and his three companions was most disgraceful, shocking and disorderly, from the time they reached the camp-meeting

98        B. & O. R. R. CO. vs. CAIN.

Opinion of the Court.                    [81

ground until they arrived in Washington. They were drunk before boarding the train, and as stated by one of the witnesses, "it was not decent for them to be where there were ladies;" and when they were remonstrated with and requested to desist from using profane language in the presence of ladies, they, all, including the plaintiff, in loud and boisterous tones, replied by saying, "God damn the ladies." The defendant further proved, that after these men entered the ladies car they cursed and swore and drank liquor openly, and that one of them was smoking; that the conductor expostulated with them and urged them to be quiet, or to go into the smoking car where they could drink and smoke as much as they pleased; that they said they had paid their fares and would ride where it suited them. The conductor again appealed to them to be orderly or he would be obliged to put them off the car; whereupon the plaintiff replied, "if you put him off (meaning Watkins, who was smoking), you will have to go too." It was further proved, that numerous complaints were made by ladies and gentlemen about the conduct of these four men, and that one lady left the car and went into the forward car. Afterwards other ladies who got on the train at other stations were put in the forward car, because it was not fit for them to enter the one where these men were. The conductor did not undertake to put them off, because he did not believe himself able to cope with these four intoxicated and lawless men. Just before the train arrived in Washington the plaintiff was still behaving in a disorderly manner and using profane language in the hearing of the passengers on the same car. There were between fifty and sixty passengers on the train, most of whom were on their way to church in Washington. Finding himself unable to control these men or to suppress their disorder, and feeling powerless to eject them because of their threatened resistance, the conductor telegraphed from Forest Grove to Washington for an officer to arrest them, and when the train drew up in the depot in that city the policeman was there, and the con-

ductor pointed out to him the plaintiff, and the officer then and there arrested the plaintiff and took him to the station house.

With these facts before the jury, there were two prayers presented by the plaintiff, both of which were granted; and there were nine presented by the defendant, all of which, except the sixth, were rejected. The view we take of the case dispenses with a separate consideration of each of these prayers, inasmuch as the defendant's fifth prayer raises the crucial inquiry contained in the record; and what we shall say in discussing that prayer will, with a few brief additional observations, dispose of most, if not all, of the others. The fifth prayer maintains that if the plaintiff was riotous and disorderly the conductor had the right to eject him; that if the conductor was unable to do this by reason of the threat of resistance, then the conductor was justified in requesting the first police officer whom he could find to arrest the plaintiff; and it proceeds, " if the jury further find, that the police officer at the Washington depot was the first police officer the conductor saw, and that the conductor used due diligence in procuring a police officer, and that the conductor directed the police officer to arrest the plaintiff for said disorderly conduct, that the defendant is not liable for this arrest, and the verdict of the jury must be for the defendant." From this prayer, considered in connection with the evidence to which allusion has been made, it is obvious at a glance that the predominant and controlling question before us involves the legality of the conceded arrest made in the city of Washington. Under the undisputed proof that arrest was made without a warrant having been first procured.

It was not made for an alleged felony, nor for a misdemeanor or breach of the peace committed within view of the officer who took the plaintiff into custody; but, if the evidence of the defendant's witnesses be credited, it was made for a flagrant breach of the peace, which began at Washington Grove and continued into Washington City, on

the moving train of the defendant, and was made at the instance of the conductor the very moment he reached a place where he could deliver these intoxicated offenders into the custody of a police officer. Was the arrest so made illegal?

It is settled that an officer has the right to arrest without a warrant for any crime committed within his view. It was his duty to do so at the common law, and this is still the law. *Roddy* v. *Finnegan*, 43 Md. 504; *Phillips* v. *Trull*, 11 Johns. 486; *Derecourt* v. *Corbishly*, 5 El. & Bl. 188; and in cases of felony he may arrest upon information, without warrant, where he has reasonable cause. *Rex* v. *Birnie*, 1 Moody & R. 160; *Rohan* v. *Sawin*, 5 Cush. 281. And so any person, though not an officer, in whose view a felony is committed, may arrest the offender. *Ruloff* v. *People*, 45 N. Y. 213. But the right of a person not an officer to make an arrest is not confined to cases of felony, for he may take into custody, without a warrant, one who in his presence is guilty of an affray or a breach of the peace. *Knot* v. *Gay*, 1 Root, 66. "It seems agreed that any one who sees others fighting may lawfully part them, and also stay them till the heat be over, and then deliver them to the constable, who may carry them before a justice of the peace, in order to their finding sureties for the peace." 1 *Rus. on Crimes*, 272; 1 *Arch. Crim. Prac. & Pl.*, 82; 1 *Haw. P. C.*, ch. 63, sec 11 and 17; 2 *Hale P. C.*, 90; *East P. C.*, 306; *Timothy* v. *Simpson*, 1 C. M. & R. 757. The case last cited was one of trespass for assault and false imprisonment and taking the plaintiff to a police station. Plea, that the defendant was possessed of a' dwelling house and the plaintiff entered the same and then and there insulted, abused and ill-treated the defendant and his servants, and greatly disturbed them in the peaceable enjoyment thereof in breach of the peace, whereupon the defendant requested the plaintiff to cease his disturbance and to depart from' and out of the house, which the plaintiff refused to do; that thereupon the defendant, in order to

preserve the peace and restore good order in the house, gave charge of the plaintiff to a policeman, and requested the policeman to take the plaintiff into his custody to be dealt with according to law, and the policeman gently laid his hands on the plaintiff and took him into custody. It appeared in evidence that the plaintiff entered the defendant's shop to purchase an article, when a dispute arose between the plaintiff and the defendant's shopman; that plaintiff refused on request to go out of the shop; the shopman endeavored to turn him out and an affray ensued between them; that the defendant came into the shop during the affray, which continued for a short time after he came in; that the defendant then requested the plaintiff to leave the shop quietly; but he refusing to do so, the defendant gave him in charge to a policeman, who took him to a station house. PARKE, B., in course of his lucid opinion, said, " It is unquestionably true that any bystander may and ought to interfere to part those who make an affray, and to stay those who are going to join in it till the affray be ended. It is also clearly laid down that he may arrest the affrayers and detain them until the heat be over, and then deliver them to a constable." Then, after quoting from *Haw. P. C.*, the same passage we have transcribed from 1 *Rus. on Crimes*, the learned Baron went on, " and pleas founded upon this rule and signed by MR. JUSTICE BULLER are to be found in 9 *Went. Plead.* 344, 345, and DEGREY, C. J., on the trial, held the justification to be good. It is clear, therefore, that any person present may arrest the affrayer at the moment of the affray, and detain him till his passion has cooled and his desire to break the peace has ceased, and then deliver him to a peace officer. And if that be so, what reason can there be why he may not arrest an affrayer after the actual violence is over, but whilst he shows a disposition to renew it by persisting in remaining on the spot where he has committed it? Both cases fall within the same principle, which is, that, for the sake of the preservation of the peace, any individual who sees it broken may restrain the liberty of him

whom he sees breaking it, so long as his conduct shows that the public peace is likely to be endangered by his acts. In truth, whilst those are assembled together who have committed acts of violence and the danger of their renewal continues, the affray itself may be said to continue; and during the affray the constable' may not merely on his own view, but on the information and complaint of another, arrest the offender; and, of course, the person so complaining is justified in giving the charge to the constable. *Lord Hale, P. C.,* 89. * * * * * * It is clear upon the facts that there was a defence on the ground of the defendant's right to arrest for a breach of the peace in his presence." See also *Grant* v. *Moser,* 5 M. & Gr. 127; *Simmons* v. *Milligan,* 2 C. B. 524; *Webster* v. *Watts,* 11 Q. B. 311 (63 E. C. L. R.); *Cohen* v. *Huskision,* 2 M. & W. 477; *Shaw* v. *Chairitie,* 3 C. & K. 21; *Burns* v. *Erben,* 40 N. Y. 466; *Smith* v. *Donnelly,* 66 Ill. 464; *Tiedeman on Lim. Police Power,* 84; *State* v. *Sims,* 16 S. C. 486—a case strikingly apposite. In *Burns* v. *Erban, supra,* it was held that " as a general principle no person can be arrested or taken into custody without a warrant. But if a felony or a breach of the peace has in fact been committed by the person arrested, the arrest may be justified, by any person, without warrant, whether there was time to procure a warrant or not; but if an innocent person be arrested upon suspicion by a private individual, such individual is not excused unless such offence has, in fact, been committed, and there was reasonable ground to suspect the person arrested. *Hales, P. C.* 72; 1 *Chitty, Cr. L.* 15; *Hally* v. *Mix,* 3 Wend. 353."

Now, if it be true that the plaintiff was guilty of the reprehensible and disorderly conduct attributed to him by the witnesses, he was incontestably engaged in a flagrant and an outrageous breach of the peace, as pronounced as if there had been an actual affray during the whole time he was in the defendant's car; and it was clearly lawful, under these conditions, for the conductor to expel him and his drunken companions from the train if he had a sufficient

force to overcome their threatened resistance, or else to arrest them all without warrant and then deliver them to the first peace officer he could procure within a reasonable time. If this were not so, then, as said by LORD C. J. DENMAN in *Webster* v. *Watts, supra,* "the peace of all the world would be in jeopardy." And it would be in jeopardy, because if in such and similar instances no arrest could be lawfully made without a warrant, the culprit, "if transient and unknown, would escape altogether," before a warrant could be obtained. *Mitchell* v. *Lemmon,* 34 Md. 181. And there would soon cease to be any order or any security or protection afforded the public on swiftly moving railroad trains, or even elsewhere, unless a peace officer were constantly present. The delay necessarily incident to obtaining a warrant would be in many, if not in most cases of this and a kindred character, equivalent to an absolute immunity from arrest and punishment; and should the name of the offender be unknown, he most probably would never be apprehended if once suffered to depart. The law is not so impotent and ineffective as that. Being physically unable to expel these alleged riotous persons from the train, the conductor telegraphed for a peace officer, and without delay, and whilst the plaintiff was still drunk, caused his arrest the instant the officer thus summoned came in view of the plaintiff. If, then, any bystander could, in the language of BARON PARKE, "for the sake of the preservation of the peace * * * * * restrain the liberty of him whom he sees breaking" the peace, the act of the conductor in telegraphing for the policeman and within a short space of time thereafter handing the plaintiff over to the officer, was in no respect different from a formal arrest of the plaintiff by the conductor, in the midst of the riot and disorder, and the prompt delivery of him afterwards to the officer. If the plaintiff was not in fact arrested by the conductor because of the presence of superior resisting force, that fact cannot make the subsequent act of the conductor in pointing out the plaintiff to the officer, wrongful or illegal. The charge, accord-

ing to the plaintiff's own testimony, was sustained; a fine was imposed and he paid it. The accusation was therefore well-founded, and what was done by the conductor, if the facts testified to by the defendant's witnesses be credited, was undeniably lawful under all the circumstances. If this be so, then there is obviously no cause of action against the defendant, because no wrong has been done to the plaintiff. This is the theory of the defendant's fifth prayer. That prayer being correct in principle and proper in form ought to have been granted. For the same reasons the second, third, fourth and seventh prayers should have been granted. The eighth was properly rejected. It makes the right to arrest depend on the fact that whilst on the train the plaintiff was charged by the conductor with being disorderly, whereas the right to arrest depended on the fact that the plaintiff was in reality disorderly. His having been charged by the conductor with being disorderly, is quite a different thing from his having been in fact disorderly. The ninth prayer was properly rejected. It failed to submit to the jury that the arrest was made for the alleged breach of the peace. Though the arrest had been made without an assigned cause, the prayer exonerated the defendant. The plaintiff's first prayer ought to have been rejected. Its fallacy lies in the postulate that an arrest for a breach of the peace, committed out of the view of a peace officer, necessarily could not be legally made without a warrant. The second prayer of the plaintiff related to the measure of damages and was correct.

The ruling in the first exception is affirmed. Though the evidence objected to had been inadmissible, the same fact was subsequently proved in an unobjectionable way by officer Howe. Consequently no injury was done, and without injury there can be no reversible error.

At the conclusion of the plaintiff's case, the defendant offered two prayers, asking the Court below to withdraw the case from the jury. They were rejected, and this ruling is the one complained of in the second exception. We find

no error in this.   If the plaintiff had been guilty of no breach of the peace, his arrest at the instance of the conductor was unlawful, and having been made in the defendant's depot whilst the plaintiff, a passenger, was still entitled to be protected by the defendant against assaults and injuries by the defendant's own employes, if wrongfully made by or at the request of the defendant's own servants whilst they were in and about the performance of their prescribed duties, the master would be liable.   There was some evidence before the jury that the arrest had been made without a warrant, and therefore the second prayer was properly rejected.   One of these prayers was again presented at the close of the case and was again rejected, and we think properly rejected.

.The remaining exception relates to the refusal of the Court below to submit special interrogatories to the jury under the Act of 1894, ch. 185.   We have had occasion to consider that Act during the present term of this Court, and need not refer again to its provisions.   The interrogatories propounded by the defendant were presented before the arguments to the jury began, and therefore at a seasonable time; and the third, fourth and fifth, submitting material questions of fact, which the defendant under the statute had the right to require the jury to pass on and respond to, should have gone to the jury for specific answers.   There was error in refusing this request.   The other questions submitted were immaterial.

For the error, then, in rejecting the defendant's second, third, fourth, fifth and seventh prayers, and in granting the plaintiff's first instruction, and for the error in refusing to submit the third, fourth and fifth special interrogatories to the jury, the judgment must be reversed and a new trial will be awarded.

*Judgment reversed with costs above*
*and below, and new trial awarded.*

(Decided March 26th, 1895.)