**UNITED STATES of America**
v.
**Elbert Ignatius HAYDEN.**
Crim. No. 23418.

United States District Court
D. Maryland.
May 1, 1956.

**430**

The defendant, charged in the first count of an indictment with removing to, and in the second count with concealing six gallons of nontax-paid distilled spirits in, a shed located behind the Ideal Cleaners, Leonardtown, Maryland, the indictment being brought under 26 U.S. C. § 5632, I.R.C.1954, has prior to the trial of the case filed a motion for the suppression of the evidence. The ground alleged for this motion is that the evidence, six gallons of nontax-paid distilled spirits, was obtained by federal investigators as the result of an illegal search and seizure, in violation of the Fourth Amendment.

Testimony given at the hearing on the motion developed the following facts. The defendant, previously convicted of the possession of nontax-paid liquor, was known to the investigators of the Alcohol and Tobacco Tax Division as a major violator. Upon two still seizures the persons found operating the stills had stated that the defendant owned the stills; that is, although not participating himself in the actual processing of the liquor, he hired the operators, supplied the raw materials, collected the finished product, and distributed it to haulers. The defendant was, in the parlance of the illicit liquor trade, a "backer". The agents had also learned from an informant, considered by them to be reliable, that the defendant was using a 1948 green Chevrolet panel truck, Maryland license number 41–56 EG, registered in his name, and bearing the words "Ideal Cleaners" on the sides, to transport the liquor and was using the shed behind his dry cleaning establishment as a "drop". Acting on this information, the investigators had closely observed the defendant's activities during the summer and fall of 1955 but without success until September 18, 1955. On that day, a Sunday, investigator Krzeski, in driving past the cleaning plant, noticed that the defendant's personal car was parked in front of the building and that the green panel truck was gone. Knowing that the cleaning establishment was never open on Sundays, and suspecting that the

George Cochran Doub, U. S. Atty., and William F. Mosner, Asst. U. S. Atty., Baltimore, Md., for the United States.

Philip H. Dorsey, Jr., Leonardtown, Md., for defendant.

R. DORSEY WATKINS, District Judge.

defendant was going to one of the still sites to pick up liquor, the agent patrolled the nearby roads. He located the truck and began to follow it at a supposedly safe distance, but the driver, becoming suspicious, succeeded in losing the trailing agent who, having again patrolled the roads in the area for two hours to no avail, at seven o'clock that evening returned to the cleaning plant. The defendant's personal car was still there and the green panel truck was parked in the driveway beside the cleaning plant. The agent then drove to the defendant's home, but, observing no activity there, returned to the cleaning plant to find the green truck in the same position and the defendant's personal car gone. Agent Krzeski approached the truck and, looking through a window in the rear of the truck, saw, partially covered with a burlap bag, a cardboard container with "Mason" written on it, the carton being of the size and type customarily used to carry jars of illegal liquor. In addition, he detected the distinctive odor of nontax-paid liquor. No attempt was made to open the rear door of the truck. Krzeski phoned his superior, Wilton Kiefer, who arrived on the scene at two o'clock in the morning. He also walked down the defendant's driveway, observed the contents of the truck through the rear window, making no attempt to open the door, and detected the order of nontax-paid liquor.[1] Agents Krzeski and Kiefer with two others then stationed themselves behind a private residence across the street from the defendant's premises, a distance of some 150 feet from the front of the defendant's property and approximately 240 feet from the shed. A constant surveillance was maintained, and no one approached the green panel truck until seven-thirty in the morning when the defendant arrived. Hayden was immediately recognized by Kiefer who had known the defendant by sight for over three years. The defendant got into the truck, backed it to the open shed, lifted the hood, obstructing the view from the street, opened the rear door of the truck, and carried the carton into the shed. At this point Krzeski and Kiefer drove onto the defendant's property, stopping at the rear of the shed. The defendant came out of the shed and, in response to Kiefer's inquiry as to how much liquor he had, denied having any. Meanwhile, Krzeski went to the front of the shed where he saw in the far rear thereof a carton covered with a burlap bag, a piece of canvas and an automobile wheel. There were no other cartons in the shed. The defendant was placed under arrest, and twelve one-half gallon jars of nontax-paid liquor were found in the carton and seized.

The agents had neither a search warrant nor a warrant for the arrest of the defendant. The defendant is not challenging the validity of his arrest, but he does challenge the lawfulness of the search of his truck and shed and the subsequent seizure of the liquor therein. Conceding that during business hours there is a broad distinction between the curtilage of a dwelling and the enclosure of a place of business, the defendant contends that after business hours "places of business and all vehicles within its enclosure are entitled to the same protection under the Fourth Amendment as the curtilage of a dwelling." To answer this contention certain established principles concerning the persons, places, and things protected and

[1]. The Court questioned whether or not the odor could be more accurately described as the odor of liquor or as the odor of unaged liquor. Agent Kiefer then testified that illicit liquor usually being made in the woods under crude conditions has a distinctive odor that can best be described as that of nontax-paid liquor. The crude method of operation also accounted for the agents' ability to detect this odor through a closed truck door sealed with rubber even though the liquor was contained in tightly sealed Mason jars. Agent Kiefer explained that the jars are usually placed in the carton at the still site, that they are then filled by means of a rubber hose, and that this results in the liquor spilling over the outside of the jars and over the carton, itself.

the type or degree of protection afforded each must first be considered and then applied to the facts involved in the instant case.

The Fourth Amendment reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The protection afforded by this Amendment, equally available to the innocent, the suspect, and the known offender, has been extended not only to dwelling houses but to places of business (Gouled v. United States, 1921, 255 U.S. 298, 305, 308–309, 41 S.Ct. 261, 65 L.Ed. 647; Go-Bart Importing Co. v. United States, 1931, 282 U.S. 344, 356, 51 S.Ct. 153, 75 L.Ed. 374; Martin v. United States, 4 Cir., 1950, 183 F.2d 436, 439, certiorari denied, 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654); to movable vehicles (Carroll v. United States, 1925, 267 U.S. 132, 45 S. Ct. 280, 69 L.Ed. 543; Husty v. United States, 1931, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629); and to vessels on the high sea, (United States v. Lee, 1927, 274 U. S. 559, 47 S.Ct. 746, 71 L.Ed. 1202). Open fields, however, have been expressly excluded from the purview of the Fourth Amendment. Hester v. United States, 1924, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L. Ed. 898; United States v. Shafer, D.C.D. Md. 1955, C.D., 132 F.Supp. 659, 664.

Not all searches without a search warrant are prohibited. The test to be applied is not solely the practicability of obtaining such a warrant but rather the reasonableness of the search itself. United States v. Rabinowitz, 1950, 339 U.S. 56, 66, 70 S.Ct. 430, 94 L.Ed. 653, overruling to that extent Trupiano v. United States, 1948, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663. The protection guaranteed under the Amendment is the right to be secure against unreasonable searches and seizures. What is reasonable in each case turns on the facts as a whole. Thus, it is reasonable when a legal arrest is made with or without a warrant to search without a search warrant the person arrested and articles in his immediate control (Weeks v. United States, 1914, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652), the scope of such a search having been extended in Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145, and in United States v. Rabinowitz, supra, 339 U.S. at page 64, 70 S.Ct. at page 434, to include the place of arrest as well. The requirement that a search warrant be obtained is not as strictly enforced when the search of a movable vehicle is involved. Justice Jackson speaking for the Court in United States v. Di Re, 1948, 332 U.S. 581, 584–586, 68 S.Ct. 222, 92 L.Ed. 210, expressed some doubt as to the validity of the distinction made in the Carroll case, supra, 267 U.S. at pages 151, 153, 45 S.Ct. at pages 284, 285, and the Husty case, supra, 282 U.S. at page 701, 51 S.Ct. at page 241, between what is a reasonable search as applied to an automobile and as applied to fixed premises in the absence of the search and seizure provisions enacted by Congress for the enforcement of the National Prohibition Act, 27 U.S.C.A. The crime, however, involved in the Di Re case was knowingly possessing counterfeit ration coupons and, as the Court notes, 332 U. S. at page 586, 68 S.Ct. at page 224, an automobile is not essential to this type of criminal activity as it would be in the removal of nontax-paid whiskey. The distinction between a reasonable search of fixed premises and of a movable vehicle is reiterated in later opinions, by Justice Frankfurter in a dissenting opinion in United States v. Rabinowitz, supra, 339 U.S. at page 73, 70 S.Ct. at page 438, in which Justice Jackson joined; by Justice Clark in United States v. Jeffers, 1951, 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59; and by Justice Jackson himself in Johnson v. United States, 1948, 333 U.S. 10, 15, 68 S.Ct. 367, 369, 92 L.Ed. 436; again speaking for the Court:

"There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. * * * No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction * * *."

It has also been indicated that less strict requirements of reasonableness may apply where the search is of business premises during business hours rather than of a dwelling. Davis v. United States, 1946, 328 U.S. 582, 592–594, 66 S.Ct. 1256, 90 L.Ed. 1453; Harris v. United States, 1947, 331 U.S. 145, 151, 67 S.Ct. 1098, 91 L.Ed. 1399.

That merely observing the contents of a closed truck through a window in a rear door in either daylight or with the use of a flashlight constitutes a search is open to some question. In United States v. Lee, supra, 274 U.S. at page 563, 47 S.Ct. at page 748, dealing with the use of a searchlight to observe a motor boat, it was said:

"But no search on the high seas is shown. The testimony of the boatswain shows that he used a searchlight. It is not shown that there was any exploration below decks or under hatches. For aught that appears, the cases of liquor were on deck and, like the defendants, were discovered before the motor boat was boarded. Such use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution."

In Smith v. United States, 4 Cir., 1924, 2 F.2d 715, 716, officers, having a search warrant for a store and outbuildings on the premises, stopped the defendant when he drove his car into the yard and, by turning a flashlight on the rear floor of the car, through an open rear door

observed 216 bottles of Jamaica ginger. The Court, in considering that the officers had no search warrant for this automobile, said:

"A search implies some exploratory investigation. It is not a search to observe that which is open and patent, in either sunlight or artificial light. Surely, under the circumstances, it was not an unreasonable search to turn a flashlight on an open automobile."

Aside from the question of whether or not the agents' acts technically constituted a search, there is in this case the additional factor that the agents had entered some eighty to one hundred feet onto the defendant's land to make their observations. The building housing the cleaning plant operated by the defendant is situated approximately twenty-five feet back from the public street on a lot sixty feet wide and one hundred forty feet in length. A parking area for customers, twenty-five by sixty feet, extends across the lot in front of this building. A cinder driveway, providing access to the parking area and sometimes used by customers for overflow parking, runs from the street along the side of the cleaning plant to the open shed which is fifteen by twenty feet and is located to the rear of the plant. The green panel truck was parked on this driveway behind a red panel truck, the latter being closer to the street, at a distance of ten feet from the side of the cleaning plant.

As has been previously noted, the protection of the Fourth Amendment does not extend to open fields. In Hester v. United States, supra, two revenue officers without a warrant entered onto the defendant's land, concealed themselves from fifty to one hundred yards away from the defendant's dwelling, observed the defendant's actions which indicated to them he was in possession of illicit liquor, and later confirmed this belief by examining the contents of certain vessels that had been discarded when the officers began to approach the house. This examination took place within fifty

to one hundred yards from a dwelling, yet the Supreme Court said, 265 U.S. at page 59, 44 S.Ct. at page 446:

"The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's father's land. As to that, it is enough to say that, *apart from the justification*, the special protection accorded by the Fourth Amendment * * * is not extended to the open fields." (Emphasis supplied.)

In applying this concept, the Courts have not accorded protection, even although the officers were trespassers, to a search of a still more than a quarter of a mile from a dwelling, Koth v. United States, 9 Cir., 1926, 16 F.2d 59, 61; to the observation of the contents of two trucks parked at the rear of a building in an open area, entry to the area having been made by use of a driveway along the side of the building, United States v. Rogato, D.C.M.D.Pa.1930, 39 F.2d 171, 174–176; to the observation of the back seat of a car parked in an enclosed area near a building in which was located a still, entrance to the enclosed area being through a gate reached by crossing the yard of a dwelling, United States v. Vlahos, D.C.D.Or.1937, 19 F.Supp. 166, 169–171; and to the search of open land even although the land was within the curtilage of a dwelling, dictum in the dissenting opinion, Walker v. United States, 5 Cir., 1955, 225 F.2d 447, 453. The entry, seizure of a jug, and examination of its contents were upheld in Martin v. United States, 5 Cir., 1946, 155 F. 2d 503, where three officers went at night to a shack to look over the premises. Upon hearing a car approach, they hid and through large cracks in the building were able to hear and observe the defendants who had entered the shack and were engaged in counting jugs. The count finished, the defendants left the building and, upon being frightened by the lights of a passing vehicle, threw a jug underneath their car whereupon the officers seized the jug and examined its contents.

The Court of Appeals for the Fourth Circuit has considered the problem of the trespassing officer in a number of cases. In Jones v. United States, 4 Cir., 1924, 296 F. 632, 634, the search was conducted on a lot fenced on all sides and on which were located the defendant's residence, his shop, and a third building which was leased to a tenant, the latter two buildings being separated from the former by an inner fence. The yard was common to all three buildings. The officers searched the store first, then the yard behind the store, and finally, the leased building. The Court, by way of dictum, stated that " * * * the mere entry of the officers into the yard of the defendant without a search warrant, and the discovery of the bottles and keg, was not obtaining evidence by an unreasonable search". Three subsequent cases have made it clear that a mere technical trespass resulting in the obtaining of information through the use of the senses of sight, smell or hearing does not contravene the Fourth Amendment and, further, that the information so obtained may in part constitute probable cause for a subsequent arrest and search without a warrant. Benton v. United States, 4 Cir., 1928, 28 F.2d 695; Janney v. United States, 4 Cir., 1953, 206 F.2d 601; dictum, United States v. Williams, 4 Cir., 1955, 227 F.2d 149, 151.[2] In the Benton case, supra, the officers secreted themselves at night in some vines outside the yard of the defendant's home from which vantage point they were able to see and hear certain activities which reasonably led them to believe nontax-paid liquor was being re-

2. See also Justice Burton's concurring opinion beginning at page 178 in Brinegar v. United States, 1949, 338 U.S. 160, 178, 69 S.Ct. 1302, at page 1312, 93 L.Ed. 1879, in which a similar distinction is made upholding the right of officers to stop a vehicle and to interrogate its driver and, the interrogation having resulted in an admission, the use of the admission to constitute, together with other information, probable cause for a subsequent search, arrest, and seizure.

moved and concealed. In the Janney case, supra, having arranged with one Charles Torain to attempt to purchase whiskey from the defendant, the officer carrying a handy talkie radio entered a field at night one-half mile from the defendant's home and proceeded across the defendant's land to a point just west of a fence one hundred feet to the east of which was located the defendant's home. As the officer watched, he was not over thirty-five feet from a truck parked in a barn on the east side of the fence, and, by the light of passing automobiles, he was able to see that the truck was loaded with a number of cases of the type regularly used in the illicit liquor trade.

In the Williams case, supra, the officers entered the defendant's land at night, stationing themselves three hundred yards away from his home on the other side of a dirt road which ran behind the house. When a panel truck pulled into the garage and loading began, the officers started up the road, the smell of nontax-paid whiskey becoming apparent as they came within twenty-five steps of the garage.

All of the cases cited differ factually in one way or another from the case before this Court. Without further laboring the facts involved in each of the cases, it may be stated that, in attempting to draw a general conclusion from them, this Court has considered the weight the various decisions have given to such factors as whether the search was conducted during the day or at night; whether the entry was on enclosed or unenclosed land surrounding a dwelling or a place of business; the distance from the building or dwelling where the search took place; the object or place that was subjected to search; whether or not the search was effected by force or coercion; the definiteness and type of information that caused the officers to enter the land; and the time elements involved in the entry, search, arrest and seizure. The holdings in these cases may be summarized by saying that the concept of a curtilage does not apply to buildings other than dwellings and that those Courts dealing with a trespass upon open land within the curtilage of a dwelling have not extended the protection of the Fourth Amendment to such land.

Accordingly, the defendant's truck had only that protection afforded to movable vehicles. No additional or different protection is available because it was parked on a private driveway beside a business establishment. Knowing the defendant's general reputation and having certain semi-specific hearsay information regarding his illegal activities verified to some degree by personal observation of the unusual movements of his green panel truck on the day in question, a Sunday, federal investigators twice committed a technical trespass and without any force, without any attempt to open the door of the truck, and without attempting to search any building on the premises, observed the contents of the truck which had already once that day eluded them. The nearest Commissioner from whom a search warrant could have been obtained, although it is doubtful that probable cause could have been established prior to the agents' observation of the contents of the truck, was sixty miles away, a round trip of one hundred-twenty miles. Had the agents made their observations while the truck was parked on a public street, their acts would not have been held to be proscribed by the Fourth Amendment. The fact that they twice walked across the defendant's land to make these observations is held not to constitute their actions an unreasonable or illegal search.

The final question for determination then becomes the legality of the search of the open shed and the seizure of the liquor. The shed, described as a garage without doors, is protected against unreasonable searches without regard to whether or not it is within the curtilage of a private dwelling. Taylor v. United States, 1932, 286 U.S. 1, 5, 32 S.Ct. 466, 76 L.Ed. 951; Martin v. Unit-

ed States, supra, 183 F.2d at page 439. In the Taylor case, supra, the search was held to be unreasonable when the agents, investigating the garage pursuant to hearsay information, upon seeing cartons which they thought contained liquor and, upon smelling whiskey, broke the lock on the garage, entered and searched the premises. The Court stressed the opportunity to obtain a warrant without any danger of a material change in the situation meanwhile and the fact that no offender was within the garage. In Scher v. United States, 1938, 305 U. S. 251, 59 S.Ct. 174, 83 L.Ed. 151, it was held that the passage of a car into an open garage did not make the search of the car unreasonable when conducted by an officer who had been closely following the car and who could have properly stopped the car and searched it on the public street, the factors emphasized being that no other search of the garage took place and that the search accompanied an arrest. In the Martin case, supra, factually analogous to the case now before this Court, the defendant's probation officer, on notice as to certain suspicious conduct of his probationer, had examined the defendant's car while it was parked on the street near the defendant's home and found as a result of this examination that the car was equipped with heavy load rear springs of the type frequently used on cars transporting illicit liquor. The officer kept the defendant under surveillance for over a month until he was finally observed driving the car into his garage, the springs indicating the car was heavily laden. The officer heard the opening of a trap door, the screech of springs, and the dragging of heavy objects across the floor. He entered the yard of the defendant's residence, approached the door of the garage, listened, opened the door and entered. He searched the premises and seized the liquor in the car, on the floor of the garage and under the trap door. He then asked the probationer and his companion to appear in Court. Although absent a technical arrest, the Court considered the search indistinguishable from a search of the premises of an accused as incident to his lawful arrest.

Relying particularly on Martin v. United States, supra, Janney v. United States, supra, and United States v. Williams, supra, this Court holds that the search of the defendant's open shed and the seizure of six gallons of nontax-paid liquor were neither unreasonable nor unlawful but rather were incident to or contemporaneous with the lawful arrest of the defendant. When an arrest by federal officers for a federal offense is made without a warrant, Maryland law is controlling in the absence of an applicable federal statute. United States v. Di Re, supra, 332 U.S. at page 589, 68 S.Ct. at page 226; Johnson v. United States, supra, 333 U.S. at page 15, 68 S. Ct. at page 369; Janney v. United States, supra, 206 F.2d at page 604.[3]

There is conflict as to whether a federal officer's authority to arrest without a warrant is that of a private citizen under the applicable state law or that authority possessed by local law enforcement officers. United States v. Coplon, supra; Coplon v. United States, supra; United States v. Jones, supra; United States v. Chodak, D.C.D.Md.1946, 68 F. Supp. 455, 457; 1950 U.S.Code Congressional Service, p. 4323. Under Maryland law, however, an arrest without a warrant, made when a felony has been committed or is being committed where there are reasonable grounds to suppose that the person arrested is the felon, is a lawful arrest whether made by an of-

3. See also: Dorsey v. United States, 5 Cir., 1949, 174 F.2d 899, 901, certiorari denied 338 U.S. 950, 70 S.Ct. 479, 94 L. Ed. 586, certiorari denied 340 U.S. 878, 71 S.Ct. 116, 95 L.Ed. 639; United States v. Coplon, 2 Cir., 1950, 185 F. 2d 629, 633–635, certiorari denied 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688; Coplon v. United States, 1951, 89 U.S. App.D.C. 103, 191 F.2d 749, 753–755, certiorari denied 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690; United States v. Jones, 7 Cir., 1953, 204 F.2d 745, 751–754, certiorari denied 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368, rehearing denied, 346 U.S. 905. 74 S.Ct. 216, 98 L.Ed. 404.

ficer (Edwards v. State, 1950, 196 Md. 233, 236–237, 76 A.2d 132), or by a private citizen (dictum, Baltimore & Ohio Railroad Co. v. Cain, 1895, 81 Md. 87, 100–102, 31 A. 801, 28 L.R.A. 688; dictum, United States v. Chodak, supra, 68 F.Supp. at page 457; 5 Md. Law Rev. p. 125, 158–159). The defendant, in the instant case, was, in fact, committing a felony in the presence of the watching officers who, having recognized him on sight and having verified their hearsay information regarding his illegal activities by observing the characteristic carton in the truck from which emanated the distinctive odor of nontax-paid liquor, had sufficient reason to believe he was engaged in removing and concealing illicit liquor when he backed his truck to the shed, lifted the hood obstructing the view, and carried the carton into the shed.[4]

The ensuing search and seizure were not conducted as a general exploratory search for some evidence to connect the defendant with a crime but were directed to one specific object already seen by the agents, and within the immediate physical control of the defendant—the carton containing the fruits of the crime. Such a search and seizure do not come within the interdiction of the Fourth Amendment even as most strictly interpreted. Davis v. United States, supra, 328 U.S. at pages 613–614, 66 S.Ct. at page 1271; Harris v. United States, supra, 331 U.S. at pages 168–169, 67 S.Ct. at page 1110; United States v. Rabinowitz, supra, 339 U.S. at pages 72–75, 70 S.Ct. at pages 437, 439. There was no forcible entry of the shed and no search of the other two buildings on the premises. Before the defendant removed the carton from the truck, the agents had only hearsay information regarding the shed's role in his illegal activities. After the liquor was placed in the open shed, they had reason to assume such contraband would not long remain there.

The motion to suppress the evidence is therefore denied.