## UNITED STATES v. STRICKLAND, Jr., et al.

### No. 9408.

District Court, W. D. South Carolina, Anderson Division.

Sept. 25, 1945.

Oscar H. Doyle, U. S. Atty., and Walter H. Hood, Asst. U. S. Atty., both of Greenville, S. C., for the United States.

Wyche, Burgess & Wofford, of Greenville, S. C., for defendants.

WYCHE, District Judge.

The information in this case charges that on or about the 17th day of April, 1945, the defendants did unlawfully, knowingly and wilfully violate Section 2(a), Title III of the Second War Powers Act, 50 U.S.C.A.Appendix § 633, and Section 1394.8177(c) of Ration Order 5C, issued by the Administrator of the Office of Price Administration, in that they had in their possession and under their control gasoline rationing coupons for 23,945 gallons of gasoline, which they had acquired in a manner not permitted by Ration Order 5C.

Upon the call of the case a jury trial was waived, after which defendants' counsel made a motion to suppress certain evidence on the ground that it had been obtained illegally through an unlawful search and seizure.

By agreement, I concluded to try the case, hear testimony in support of the motion, and consider the question raised by the motion during the trial.

The Government offered two witnesses, W. Foy Parrish and Reuben J. Watson. Parrish testified in substance: That he was, prior to and on April 17, 1945, a Special Agent of the Currency Protection Branch of the Office of Price Administration; that on April 16 and 17, 1945, he received from one Cannon information that two persons would on April 17, 1945, transport in an automobile from Athens, Georgia, to Anderson, South Carolina, a large quantity of gasoline coupons on gummed sheets for the purpose of making a sale and delivery thereof and would, at Anderson, South Carolina, drive to the Calhoun Hotel where they would meet Cannon; that Atlanta, Georgia, is the location of the Verification Center of the Regional Office of Price Administration where gasoline ration coupons on gummed sheets are sent by depository banks for screening, that is, for determination of the genuineness of used coupons and destruction after screening; that Parrish and Cannon had agreed that Cannon would meet the automobile and its two occupants and that if they had the gasoline coupons on gummed sheets that he would, by the use of his handkerchief, signal such fact to Parrish and Watson; that Parrish had, prior to this time, received other information in other cases from Cannon and found such other information correct and Cannon reliable in regard thereto; that on April 17, 1945, Parrish requested Watson, a United States Deputy Marshal, to accompany him, and that at about 3 o'clock in the afternoon, without search or arrest warrant, they went to the vicinity of the Calhoun Hotel, and watched from then until about 10 o'clock that night for the arrival of the two persons in an automobile whom Cannon had informed them would come there with gasoline coupons on gummed sheets; that at about 10 o'clock p.m. of that day an automobile bearing a Georgia license plate with two persons, the defendants, occupying the front seat thereof stopped in front of the Calhoun Hotel and Cannon went to it and communicated with the occupants while Parrish and Watson watched and that then the car was driven to the parking lot of the Calhoun Hotel at the rear thereof; that Cannon gave the pre-arranged signal with his handkerchief to communicate to Parrish and Watson that these were the two persons whom he had informed them were coming and that they had with them the gasoline coupons on gummed sheets;

that Parrish then approached the driver's side of the parked car as Watson approached the other side of the car and Parrish flashed the beam of his flashlight in the front of the car where the two defendants were sitting, the window on the driver's side being down, and saw lying on the seat between the two defendants a bundle of gummed sheets of coupons partially covered with a newspaper; that after seeing the gummed sheets of coupons he announced to the two men in the car: "We are Federal officers, you are under arrest, put your hands where we can see them;" that the driver, Hunter, put his hands on the steering wheel, but the other man kept his hands out of sight between his knees; that he, Parrish, repeated, "Put your hands where we can see them", and thereupon the other defendant, Strickland, dropped something to the floorboard of the car which Parrish then saw to be a pistol; that he, Parrish, made the arrest. That he ordered the men out of the car and took possession of the gummed sheets of coupons and there were 220 such sheets containing A, B, C, R, and T, gasoline rationing coupons representing approximately 23,945 gallons; that his search of the car revealed another pistol in the glove compartment, two bottles of rum and several "tip-boards"; that the driver, Hunter, was under the influence of intoxicants, but that Strickland was not drinking; that the defendants were placed in the Anderson County Jail for the night, and on April 18, 1945, were taken before the United States Commissioner.

The gummed sheets of coupons, two pistols and two bottles of rum were admitted in evidence. The gummed sheets were OPA Form No. R—120A. The gummed sheets of coupons bore, respectively, the names of many different service stations in a number of southeastern and southern states written thereon and also bore, respectively, the endorsements of eleven different banks in several southern states.

Reuben J. Watson testified substantially in accordance with the testimony of Parrish, stating that he saw a bundle with a newspaper lying over it on the front seat of the car between the two defendants when Parrish flashed his flashlight therein. At that time he did not see the gummed sheets or coupons. The defendants did not testify and did not offer any evidence.

The Fourth Amendment, in part, is as follows: "The right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

■ It is well established in the Federal Courts that papers and property obtained from a defendant in violation of his constitutional rights under this Amendment cannot be used in evidence against him if application for their return, or for the suppression of such evidence, is seasonably made. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654.

■ It will be observed that the Fourth Amendment does not prohibit all searches and seizures, but only such as are *unreasonable*. It is to be construed in a manner which will conserve public interests as well as the interests and rights of individual citizens. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. Even though the officers had no search warrant to search the automobile of the defendants, it is my opinion that there was no unreasonable search under the facts in this case prior to the arrest of the defendants. A search implies some exploratory investigation. To observe that which is open and patent in either sunlight or artificial light is not a search. Certainly, under the circumstances here, i.e., upon a belief, reasonably arising out of dependable information furnished the agent of the Office of Price Administration that the automobile contained contraband gasoline coupons, coupled with such agent's authority to make inquiry and to require the production of gasoline certificates for inspection under Regulation 1394.8227, hereinafter referred to, it was not an unreasonable search to turn a flashlight on the open window of an automobile and observe gummed sheets of gasoline rationing coupons lying on the front seat, only partially covered by a newspaper. Smith v. United States, 4 Cir., 2 F.2d 715.

■ It is unnecessary to determine whether or not the seizure here was unreasonable, for the seizure followed the arrest. The right to search and seize for the purpose of discovering the fruits, instruments or evidence of crime is incident to a lawful arrest. When a man is legally arrested for any offense, whatever is found upon his person, or in his possession, which it is unlawful for him to have, and which may be used to prove an offense, may be seized and held as evidence in the prosecution. Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann.Cas. 1915C, 1177; Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790.

It follows, therefore, that the question to be determined is, was the arrest of these defendants lawful?

■ The defendants were arrested without any warrant. The general rule is that a peace officer may arrest without a warrant one guilty of a misdemeanor, if committed in his presence, and he may arrest without a warrant one believed by the officer, upon reasonable cause, to be guilty of a felony. Carroll v. United States, supra.

Under Regulation 1394.8227, issued by the Office of Price Administration, under the authority of the Second War Powers Act, investigators of the Office of Price Administration, police officers, constables, or other law enforcement officers of the United States, or of any State, County or local Government, may require any person to produce for inspection any gasoline certificate, whether valid or invalid, void or expired; they are authorized to make inquiries of such persons to determine whether there is a violation of Ration Order 5C; and they are authorized to receive the surrender of all gasoline deposit certificates, and other evidences acquired by any person otherwise than in accordance with Ration Order 5C, whether valid, invalid, void or expired.

The right of any officer, agent, or employee of the United States engaged in the enforcement of any law of the United States to arrest without a warrant any person committing any offense in his presence, or any person who has committed, or who is suspected on reasonable grounds of having committed, a felony, is given recognition by the Congress of the United States in section 53a of T 18 U.S.C.A. prohibiting unlawful searches by officers, agents or employees of the United States, in the following proviso: "Provided, That nothing herein contained shall apply to any officer, agent, or employee of the United States serving a warrant of arrest, or *arresting or attempting to arrest any person committing or attempting to commit an offense in the presence of such officer, agent, or employee, or who has committed, or who is suspected on reasonable grounds of having committed, a felony."* (Emphasis added.)

Without deciding whether the arrest of the defendants was lawful under the foregoing proviso of section 53a, 18 U.S.C.A. or under Regulation 1394.8227, and assuming for the purposes of this case that Office of Price Administration Agents are without authority as peace officers to make arrests, and that they have only such authority in the premises as is *expressly* provided by statute, or as is possessed by any private citizen, it is my opinion that the defendants, under the facts here, were subject to arrest and search by any private person without a warrant. Every citizen is under a moral obligation to prevent the commission of a felony, if possible, and has the legal right to use force to prevent its commission and to arrest the perpetrator without a warrant. Backun v. United States, 4 Cir., 112 F.2d 635.

Any person, law enforcement officer, or private person, can make an arrest where a felony has in fact been committed, and the person making the arrest has probable cause for so believing. United States v. Lindenfeld, 2 Cir., 142 F.2d 829; Brady v. United States, 6 Cir., 300 F. 540.

■ It is both the right and the duty of a private person, as well as a law enforcement officer, who is present when a felony is committed, to arrest the felon without waiting for the issuance of a warrant. Likewise, a private person may lawfully arrest without a warrant on fresh pursuit one whom he knows to have committed a felony. A private person acting in good faith may arrest without a warrant one who has committed a felony on an occasion already passed. In order to justify an arrest without a warrant by a private person the circumstances under which he was acting must be such that any reasonable person acting without passion or prejudice would have suspected that the person arrested committed a felony, or was implicated in it. 6 C.J.S., Arrest, § 8, pp. 606, 607.

■ The information from a reliable informant, reinforced by the agent's sight of the contraband coupons before arresting the defendants, that two persons were bringing such coupons to make a sale thereof, was sufficient to lead a reasonably discreet and prudent person to believe that such persons were then and there engaged in an overt act to effect the object of a conspiracy to have in their possession coupons acquired unlawfully and to transfer such coupons unlawfully; to establish that the defendants had in fact so conspired and had committed and were committing an overt act in furtherance of their previously formed conspiracy; and that the arrest would prevent the successful consummation of the object of the conspiracy. Such conspiracy is a felony. 18 U.S.C.A. § 88, Criminal Code, § 37; 18 U.S.C.A. § 541.

■ It is provided by Ration Order 5C, Section 1394.8227(b), that: "all tire inspection records and gasoline deposit certificates and all coupon books, coupons, and other evidences are, and when issued shall remain, the property of the Office of Price Administration." The Office of Price Administration is, of course, an agency and instrumentality of the United States, and the coupons were, therefore, the property of the United States. Information was received from a reliable informant that the coupons were upon gummed sheets. This indicated that the coupons had been previously used, and had been unlawfully diverted from their regulated course, which was to a Verification Center of the Office of Price Administration, for determination as to their genuineness, and their subsequent destruction, if genuine. The agent, as a reasonably discreet and prudent person, thus had probable cause to believe that these coupons had been stolen or embezzled, and that the two defendants had retained them in their possession with intent to convert them to their own use. This offense is a felony. 18 U.S.C.A. § 101, Criminal Code, § 48; 18 U.S.C.A. § 541. The decision of the United States Attorney to prosecute the defendants under the Second War Powers Act, the violation of which is only a misdemeanor, is immaterial. Under the facts heretofore narrated, the arrest of the defendants and the seizure of the property were legal, and the evidence thus obtained was admissible for all purposes.

■ The evidence establishes that the contraband coupons for 23,945 gallons of gasoline were upon official OPA forms bearing the endorsement of many different service stations, and many different banks; that they had been stolen or embezzled; that the defendants' possession of them was unlawful; and they were acquired by the defendants in a manner not permitted by Ration Order 5C.

For the foregoing reasons the motion to suppress the evidence is denied, the defendants are adjudged guilty, and an order accordingly may be presented.