**UNITED STATES v. COLE et al.**

**No. 7924 Criminal.**

District Court, D. Connecticut.

Jan. 28, 1947.

Adrian W. Maher, U. S. Atty., and V. J. Sacco, and Thomas J. Birmingham,

Asst. U. S. Atty., all, of Hartford, Conn., for plaintiff.

Frederick J. Rundbaken and Harry Cooper, both of Hartford, Conn., for defendants.

SMITH, District Judge.

The defendants, who have been bound over to this court on charges of violation of the Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., move under Rule 41 (e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, to suppress certain documents and a sum of money seized by agents of the Office of Price Administration for use as evidence against them. The defendants also seek, under Rule 12(b) (2), the dismissal of the criminal charges pending against them, basing their claim for both types of relief on the alleged illegality of the seizure of the documents and money, under the Constitution, Amendments 4 and 5. The Fourth Amendment in part is as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

■ "It is well established in the Federal Courts that papers and property obtained from a defendant in violation of his constitutional rights under this Amendment cannot be used in evidence against him if application for their return, or for the suppression of such evidence, is seasonably made. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654." United States v. Strickland, D.C.W.D. So. Car., 1945, 62 F.Supp. 468 at page 471.

The Fifth Amendment in part provides: "* * * nor shall (any person) be compelled in any Criminal Case to be a witness against himself * * *."

The Government defends the legality of the seizure on the ground that the documents and money were voluntarily surrendered and on the alternate ground that if the surrender is held not voluntary it is still legal as incidental to a lawful arrest, under the doctrine of Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915 C, 1177.

■ The two principal questions in this case are the voluntary character of the surrender of the money and of the documents and the power of arrest of special agents of the Office of Price Administration. As to the first, it appears plain from the evidence that the permission given by the defendants to take the money and documents was, at best, a grudging acquiescence and not a consent freely and voluntarily given.

■ On the second point, the Government rests its claim of authority in the agents upon the language of the Act permitting the employment of such employees as the Administrator "deems necessary in order to carry out his functions and duties under this Act," 50 U.S.C.A.Appendix, § 921, and the authorization to the Administrator to make such "investigations as he deems necessary or proper to assist him in enforcement of this Act." This language, it is argued, parallels that of the National Prohibition Act, empowering the Commissioner of Internal Revenue "to appoint and employ such assistants, experts, clerks, and other employees * * * as [he] may deem necessary for the enforcement of the provisions of this act," 27 U.S.C.A. § 61, under which it is claimed that the Daison case held that prohibition agents might arrest for misdemeanors committed in their presence. United States v. Daison D.C.E.D.Mich., 1923, 288 F. 199. Yet the parallel is most difficult to draw. Agents necessary for the enforcement of prohibition may well have been intended by the Congress to have the power to arrest. The Daison case, indeed, points out the more specific language of Section 28 of Title 2 of the National Prohibition Act and of Title 2, § 26 of the Act, 27 U.S.C.A. § 45 and § 40, which leaves no doubt of the intent of Congress. The language used in the Price Control Act would seem rather to point to a desire on the part of the Congress that the Administrator investigate but turn to the existing law-enforcement agencies where criminal process was necessary.

Nor do the examples cited of the quarterly reports showing enforcement steps taken by the Office, arrests made in connection with stolen or counterfeit ration currency,

indicate that it was made plain to the Congress that the arrests were made by agents claimed to have been given that authority by the Price Control Act itself. Such arrests may have appeared to the Congress to have been on warrants secured by Office of Price Administration personnel and served by other officers or to have been on felony charges under other acts ‘ than the Price Control Act. See Title 18 United States Code Annotated, Sections 72, 73, 99, 100, 101. Likewise with the 16th and 17th reports of the Price Administrator prominently mentioning the use of Office of Price Administration "special agents" applying "criminal investigative technique" in investigating "criminal violations in the price field". Certainly if the Administrator desired to inform the Congress that his agents were making arrests under a claim of authority in the Act, he chose in the term "investigative technique" a most oblique method of informing the Congress that his investigators were exercising such a power to make arrests. The Court cannot say that the examples cited are any proof of either administrative construction of the Act as giving agents and employees of the Administrator the power to arrest for misdemeanors committed in their presence without warrants, or any adoption of such an administrative construction by the Congress after the interpretation had been called to the attention of Congress.

The Government relies upon the case of Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, in which the seizure of gasoline ration coupons by agents of the Administrator was upheld. We cannot, however, find any direct support for the Government's claims in that case, for the seizure was upheld as a voluntary surrender of documents of a public nature, to which the demanding officers were entitled, and not as a seizure incidental to arrest found to be reasonable. The opinion not only points out that the question was not reached, but lacks any discussion of whether the agents were deputized under any other provision of law to make the arrests or whether the city detectives had any part under state law. It may be noted that in the Davis case, Davis was immediately arrested at the gas station on the same charge as the attendant and that some six weeks later he was again arrested on a warrant and arraigned, indicating the possibility that the prosecuting officials considered the first arrest at the gas station to have been illegal.

If the Congress desired to grant to employees or agents of any emergency agency such as the Office of Price Administration the power of arrest, it would find language better suited to the purpose than the language relied on here. It is far more likely that the Congress desired to preserve in this price control legislation the safeguards against indiscriminate arrest which are provided by the normal prosecuting machinery.

The Congress has thought it necessary to spell out the power of arrest for marshals, deputy marshals, Federal Bureau of Investigation agents, officers of the Secret Service, of the Immigration Service and of the Customs Service. It is not reasonable to suppose that the Congress would allow to depend on implication any such intended power in agents or employees of an emergency administrative unit such as the Office of Price Administration. United States v. Chodak, D.C.Md.1946, 68 F.Supp. 455, 457.

We cannot agree with the Court in the Strickland case (United States v. Strickland, D.C.W.D.So.Car.1945, 62 F.Supp. 468) that Title 18, United States Code Annotated, Section 53a, was intended to broaden the powers of arrest. It is rather a safeguard against disturbing the existing powers of arrest. It is to be noted also that the Court in the Strickland case specifically refused to base its ruling on the interpretation of 53a but relied on the right of any citizen to arrest in felony cases. United States v. Strickland, supra, 62 F.Supp. at page 472.

■ In the absence of statutory authority, one has the power to arrest without warrant for crime committed in his presence only for felony or breach of the peace. Carroll et al. v. United States, 1925, 267 U. S. 132, 157, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. The crime charged here falls in neither of these classifications.

584

. The evidence presents a sordid picture of profiteering and greed, but the protection of the Bill of Rights may not be denied even the meanest of our citizens lest we risk a return to the greater evil against which these amendments to our Constitution were aimed.

"If great principles sometimes appear as finicky obstructions in bringing a criminal to heel, this admonition of a wise judge gives the final answer: 'Such constitutional limitations arise from grievances, real or fancied, which their makers have suffered, and should go pari passu with the supposed evil. They withstand the winds of logic by the depth and toughness of their roots, in the past. Nor should we forget that what seems fair enough against a squalid huckster of bad liquor may take on a very different face, if used by a government determined to suppress political opposition under the guise of sedition.' Learned Hand, J. in United States v. Kirschenblatt, 2 Cir., 16 F.2d 202, 203, 51 A.L.R. 416. Frankfurter, J., dissenting in Davis v. United States, supra, 328 U.S. 615, 66 S.Ct. 1272.

Since the seizure cannot be justified either as a voluntary delivery to the agents or as incidental to a lawful arrest, it is not "reasonable" within the meaning of the Fourth Amendment and the evidence must be suppressed and returned to the defendants' possession.

The order binding over the defendants may be dismissed because of a defect in its institution, the use of illegally seized evidence before the United States Commissioner, without prejudice to lawful prosecution of the defendants.

Under Rule 12 (b) (5) the defendants are continued in the same bail for thirty days pending the filing of an indictment or information.

The motion to suppress and to return evidence is granted.

The motion to dismiss the proceedings against the defendants is granted without prejudice to the institution of prosecution for the same alleged offense by a lawful complaint and binding over, information, or indictment.