## HENDERSON v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. April 14, 1926.)

No. 2348.

**1. Criminal law ⬰394.**

Evidence obtained by search in violation of defendant's constitutional rights is inadmissible in evidence. .

**2. Arrest ⬰71—Search of defendant's premises after arrest without warrant on refusal of permission to make search, held unreasonable, and not incidental to lawful arrest. .**

Where government agents, after informers had purchased cocaine of defendant, entered store, part of which was used as dwelling, demanded right to make search, and, on being refused permission, arrested defendant without warrant and then made search, finding cocaine and marked money in bedroom, *held* arrest was not primary purpose of officers, and search could not be held reasonable as incidental to lawful arrest.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; D. Lawrence Groner, Judge.

John Henderson was convicted of violating the Harrison Anti-Narcotic Act. He brings error. Reversed and remanded.

L. O. Wendenburg, of Richmond, Va. (Wendenburg & Haddon, T. Gray Haddon, and Alfred J. Kirsh, all of Richmond, Va. on the brief), for plaintiff in error.

Alvah H. Martin, Asst. U. S. Atty., of Norfolk, Va. (Paul W. Kear, U. S. Atty., of Norfolk, Va., and Callom B. Jones, Asst. U. S. Atty., of Richmond, Va., on the brief), for the United States.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge. [1] The plaintiff in error, defendant in the court below and so designated in this opinion, was convicted of violating the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q). The principal point presented by his assignments of error relates to the action of the trial court in admitting as evidence against him cocaine and marked money which one Woodside, an official of the government, testified to having found while making a search of his bedroom. Defendant contends that this search was unlawful and unreasonable and violative of his constitutional rights because made without a search warrant. The contention of the government is that the search, although admittedly made without a warrant, was lawful on the theory that it was incidental to a lawful arrest. The case hinges upon the legality of the search. If it was lawful, defendant has no ground of complaint. If it was in violation of his constitutional rights, the court erred in permitting the evidence thus obtained to be used against him. Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. ——; Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654.

[2] Defendant, who is an aged colored man, runs a small grocery store in the city of Richmond. He lives in the building in which his store is situate, the storeroom being in the front and being partitioned off from the part used as a dwelling. On the night of September 2, 1924, Woodside and Rocchiccioli, agents of the government, suspecting that defendant was unlawfully dealing in narcotic drugs, gave marked money to two colored informers and sent them to purchase cocaine from him. The officers waited some distance from defendant's store while the informers went to make the purchase. In a short while the informers returned and reported having purchased from the defendant cocaine which they delivered to the officers. The officers thereupon accompanied the informers to the store where admission was gained by the informers. The officers went into the store with them and notified the defendant that they were going to place him under arrest for the illegal sale of narcotics. They asked the informers to point out the person from whom they bought the cocaine, and, upon defendant's being pointed out, they demanded that he tell them where the money was which had been paid to him. Upon defendant's refusing to give them any information and protesting that they had no right to search without a warrant, Woodside handcuffed him to one of the informers and made him sit in a chair. He then placed Rocchiccioli over defendant with a black-jack and with instructions to "knock him in the head" if he attempted to get out of the chair and proceeded to search the part of the building used as a dwelling. He testified that the cocaine and marked money offered in evidence were found by him in the course of this search on a dresser in defendant's bedroom.

It is admitted that the government officers had no warrant either for the arrest of the defendant or for the search of his premises. There is no showing or contention that it was necessary to arrest defendant without a warrant to prevent his escape, and a careful consideration of the evidence leads irresistibly to the conclusion that the search of his dwelling was made, not as an incident of

the arrest, but as the chief object which the officers had in view in entering upon his premises. Instead of the search being incidental to the arrest, therefore, the arrest was incidental to if not a mere pretext for the search. The question is whether a search made under such circumstances violates the constitutional rights of the defendant. We think that it does.

The Fourth Amendment to the Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

As said by Mr. Justice Day in Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177: "The effect of the Fourth Amendment is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our federal system with the enforcement of the laws. * * * The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land."

In the Gouled Case, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647, having under review the rights of a citizen under the Fourth and Fifth Amendments to the Constitution, Mr. Justice Clarke, speaking for the unanimous court, said: "It would not be possible to add to the emphasis with which the framers of our Constitution and this court [citing cases] have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is that such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right, to trial by jury, to the writ of habeas corpus and to due process of law. . It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers."

In the recent case of Agnello v. U. S., supra, Mr. Justice Butler said: "The protection of the Fourth Amendment extends to all equally—to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is, in itself, unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of search warrants for that purpose. Thus, the National Prohibition Act, approved October 28, 1919, c. 85, tit. II, par. 25, 41 Stat. at L. 305 (315 Comp. Stat. par. 10, 138½m, Fed. Stat. Anno. Supp. 1919, p. 213), provides that no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or is in part used for business purposes, such as store, shop, saloon, restaurant, hotel, or boarding house. And later, to the end that government employees without a warrant shall not invade the homes of the people and violate the privacies of life, Congress made it a criminal offense, punishable by heavy penalties, for any officer, agent, or employee of the United States, engaged in the enforcement of any law, to search a private dwelling house without a warrant directing such search. Act of November 23, 1921, c. 134, par. 6, 42 Stat. at L. 222, 223 (Comp. Stat. par. 10, 184a, Fed. Stat. Anno. Supp. 1921, p. 230). Safeguards similar to the Fourth Amendment are deemed necessary and have been provided in the Constitution or laws of every state of the Union. We think there is no state statute authorizing the search of a house without a warrant; and, in a number of state laws recently enacted for the enforcement of prohibition in respect of intoxicating liquors, there are provisions similar to those in paragraph 25 of the National Prohibition Act. Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for

12 F.(2d)—34

the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See Entick v. Carrington, 19 How. St. Tr. 1030, 1066. Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful, notwithstanding facts unquestionably showing probable cause."

The principles embodied in the Fourth Amendment, and emphasized in the decisions from which we have quoted, have been recognized since the earliest days of our jurisprudence. It was a maxim of the common law that "every man's house is his castle." The courts of Star Chamber, which "favored prerogative at the expense of liberty," had sanctioned arrest and search under general warrants, and this practice was continued without question until the reign of George III, when it received its death blow "from the boldness of Wilkes and the wisdom of Lord Camden." The famous struggle culminating in the decision of Entick v. Carrington, 2 Wils. 275, 19 State Trials, 1030, was fresh in the memory of the framers of the Constitution, as was also the controversy in the Colonies over the "writs of assistance," empowering revenue officers to search suspected places for smuggled goods, which James Otis denounced as "the worst instrument of arbitrary power, the most destructive of English liberty and the fundamental principles of law, that ever was found in an English law book" since they placed "the liberty of every man in the hands of every petty officer." Cooley's Const. Lim. (7th Ed.) 426; Boyd v. U. S., 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746. It was to prevent just such abuses of executive power as were manifested in the instant case that the guaranties of the Fourth Amendment were written into the Constitution.

It is argued that the officers had probable cause to believe that defendant had committed a felony and that they were therefore justified in arresting him without a warrant and in searching his premises as an incident to his lawful arrest. As said by Mr. Justice Butler in the Agnello Case, supra: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime, and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits, or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted."

But that principle has no application here, where it is evident that the search was not a mere incident of a lawful arrest but that the arrest was a mere incident of an unlawful search. The alleged offense was not committed in the presence of the officers. There was no reason to apprehend that the defendant would escape if the arrest were delayed until a warrant could be obtained, and no other reason, so far as we can see, for such haste in the arrest. On the other hand, there was a reason why the officers desired to make an immediate search of defendant's premises. They had given marked money to the informers with which to purchase cocaine, and an immediate search was expected to reveal the marked money in his possession. That this was the real object of the officers appears from the fact that immediately upon gaining admission to the premises they demanded the right to search, and only placed the defendant under physical restraint when he denied their right to search without warrant. The officers could not do indirectly what they could not do directly. And certainly they could not nullify the constitutional provision against unreasonable searches and the act of Congress making it a crime to search a private dwelling without warrant by the simple expedient of placing the defendant under arrest. The great bulwark of individual liberty, incorporated in the Fourth Amendment, would be but a mockery, if petty officers of the government were at liberty to disregard its provisions whenever, to procure evidence, they might see fit to arrest without a warrant upon a belief that felony had been committed. The Constitution requires, not only a warrant, but, as preliminary thereto, a judicial determination of probable cause supported by oath or affirmation particularly describing the place to be searched. Congress has made it a crime for an officer of the government to search a private dwelling without such warrant. Can it be the law that an officer, for the purpose of seeking evidence, may invade the home of a citizen and search it, without the oath or affirmation required by the Constitution, and without having the question of probable cause determined by a judicial officer, upon merely deciding for himself that there is probable cause to believe that some person within the home is guilty of a felonious violation of a revenue act? Shall such determination by the officer of probable cause obviate all necessity for complying with the

prerequisites to the right of search which the Constitution has so carefully prescribed as a safeguard to the privacy of the home? And when it appears, as it does here, that the search and not the arrest was the real object of the officers in entering upon the premises, and that the arrest was a pretext for or at the most an incident of the search, ought such search be upheld as a reasonable one within the meaning of the Constitution? Manifestly not. To quote again the language of Mr. Justice Butler: "The search of a private dwelling without a warrant, is, in itself, unreasonable and abhorrent to our laws."

And to paraphrase language of Mr. Justice Clarke, the rights guaranteed by the Fourth Amendment are not to be thus encroached upon or gradually depreciated by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers.

Our conclusion, therefore, is that, as the evidence objected to was obtained by means of an unreasonable and unlawful search in violation of the constitutional rights of the defendant, it was erroneously admitted in evidence; and for this error the judgment of the District Court is reversed, and the cause is remanded for a new trial.

Reversed.