**UNITED STATES v. CHODAK (two cases).**

Criminal Actions Nos. 20981, 20982.

District Court, D. Maryland.

Oct. 30, 1946.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for plaintiff.

Emanuel Gorfine, of Baltimore, Md., and Samuel J. Freedman, of Boston, Mass., for defendants.

CHESNUT, District Judge.

In these two criminal informations the defendants, engaged in the business of selling used automobiles, are charged with the violation of Maximum Price Regulation No. 540, Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., Section 2(a) (4) of Regulation No. 540, by the alleged sale and delivery of a described automobile at a price of $225 higher than the maximum price permitted by the Regulations. The defendants have respectively moved to suppress certain written and documentary evidence seized and taken from their possession in alleged violation of the Fourth and Fifth Amendments to the Federal Constitution which forbids unreasonable searches and seizures and self incrimination. The offense is classed as a misdemeanor and is not a felony. The material facts are not in dispute and may be shortly stated.

On September 12, 1946, Robert Swartz informed local agents of the O.P.A. that he was negotiating with the defendants to purchase a particular automobile; and that the ceiling price under the Regulations was $1225, but that the defendants were willing to sell it only at the higher price of $1450; and that the proposed arrangement between the purchaser and the sellers was that $500 in cash should be paid as the down payment and the balance of the purchase price to be financed. The O.P.A. agents advised Swartz to proceed with the transaction, apparently expecting to make a case against him for violation of the Regulations. Accordingly they accompanied Swartz to a place near by the defendants' business establishment in Baltimore City, and secreted themselves across the street, while Swartz went into the defendants' office. Shortly thereafter the defendant, Samuel Chodak, demonstrated the automobile to Swartz by driving it around several blocks and returning to the defendants' place of business. Swartz and Samuel Chodak entered the defendants' small office building, at which time the $500 was paid by Swartz to Chodak and presumably the necessary papers for transfer of title and application for financing were signed by him. Immediately thereafter Swartz left the defendants' office and gave a pre-arranged signal to the agents from which they understood or inferred that the transaction had been completed to the extent above mentioned. Thereupon immediately the agents crossed the street, accosted Samuel Chodak, showed him their official badge as O.P.A. agents, told him that he was under arrest, demanded that he give them the money he had just received from Swartz, and took him or followed him into his office. There they again demanded the $500 and over his protest and their threat of force (as stated by Chodak and denied by the agents) received the $500, and at the same time they seized and took from his possession also twenty-five separate papers and documents, five of which apparently related to the particular transaction and the others being apparently general business papers having no relation to the transaction, the latter including the defendants' cash book and bank book. Samuel Chodak testified that in process of seizing these papers the agents opened various closed drawers in his office and took out the papers. The agents denied that they had opened any closed compartments but admitted seizure of the papers

and documents. The defendant was then taken to a local police station and imprisoned for seven or eight hours until he succeeded in procuring his release on bail. The next morning a complaint was made against him by the agents before the United States Commissioner and he was given a hearing and held for further action.

The questions of law which arise on the motions are (1) did the O.P.A. agents have the legal authority to arrest the defendant in the circumstances, and (2) if so, was the seizure of his money and papers permissible or an unreasonable search and seizure under the Fourth and Fifth Amendments.

It was conceded by the United States Attorney that O.P.A. agents have no statutory authority to make arrests; but it is contended that the arrest was nevertheless authorized in this case because any private citizen has a right to make an arrest when a crime is committed in his presence. And the seizure of the defendant's money and papers is justified by the United States Attorney on the ground that it was merely an incident of the arrest.

I am unable to approve these contentions. In my opinion, under the circumstances, the arrest of the defendant was without legal authority, and the seizure of his papers and effects was plainly contrary to the protection afforded by the Fourth and Fifth Amendments.

With respect to the power to make arrests it is a common law principle that a private citizen may not make an arrest without a warrant, in cases of misdemeanors, unless the offense is committed in his presence and amounts to a breach of the peace. Wharton's Criminal Law, Vol. 1, 12th, Ed., § 383; Zoline's Federal Criminal Law & Procedure, § 31; Carroll v. United States, 267 U.S. 132, 157, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; United States, v. Sam Chin, D.C.Md., 24 F.Supp. 14, 16; Rouda v. United States, 2 Cir., 10 F.2d 916, 918; Bohlen & Schulman, Arrest With and Without a Warrant (1927) 75 Un. of Penna.Law Rev. 484, 485–492; 1 Torts A.L.I.(1934) § 121(h), page 263. See also Note 3, to Mr. Justice Frankfurter's dissenting opinion in Davis v. United States, 66 S.Ct. 1256, 1269. The power of a private citizen to make an arrest in cases of felony is somewhat broader, but is limited to cases where a felony in fact has actually occurred.

Whether an O.P.A. investigating and enforcement agent has any broader authority than a private citizen to make arrests is perhaps presently a debatable question. There are a few cases in which it has seemingly been assumed that in the circumstances respectively therein involved the agents did have the power to arrest. Davis v. United States, supra; United States v. Victor Lagow, D.C.S.D.N.Y., 66 F.Supp. 738. But the power of arrest, other than that of a private citizen, has been denied or at least questioned in other cases. Garland v. Brown, D.C.N.D.Tex., 52 F.Supp. 401; United States v. Strickland, D.C.W.D.S.C., 62 F.Supp. 468. It is significant that Congress did not expressly confer on O.P.A. agents authority to arrest as it has done by statute with respect to numerous other government officers.[1] I am inclined to the view that, considering the whole structure of the Emergency Price Control Act, it was not the implied intention of Congress to confer any authority on O.P.A. agents to make arrests other than that which a private citizen has. In Carroll v. United States, 267 U.S. at page 157, 45 S.Ct. 280, 286, 69 L.Ed. 543, 39 A.L.R. 790, Chief Justice Taft, speaking for the court and quoting from the common law, said:

" 'In cases of misdemeanor, a peace officer like a private person has at common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence.' Halsbury's Laws of England, vol. 9, part III, 612.

[1] See for example 8 U.S.C.A. §§ 110, 287, regarding immigration officers; Custom's officers, 19 U.S.C.A. § 1581(b) and (f); Deputy Marshals, 28 U.S.C.A. § 504a; F.B.I. Agents, 5 U.S.C.A. § 300n; Internal Revenue Officers, 18 U.S.C.A. §§ 593, 594; Marshals, 28 U.S.C.A. § 504a: Secret Service men, 18 U.S.C.A. § 148.

"The reason for arrest for misdemeanors without warrant at common law was promptly to suppress breaches of the peace, (1 Stephen, History of Criminal Law, 193), while the reason for arrest without warrant on a reliable report of a felony was because the public safety and the due apprehension of criminals charged with heinous offenses required that such arrests should be made at once without warrant. Rohan v. Sawin, 5 Cush. [Mass.] 281."

So far as I have found this is the most authoritative statement of the law on the subject by the Supreme Court.[2]

In applying that law to the facts of this case the necessary conclusion is that the arrest was without authority because it is obvious that the nature of the alleged offense did not constitute a breach of the peace.

Furthermore the facts do not justify the finding that the offense if committed at all was in the presence of the O.P.A. agents. The nature of the alleged offense was a financial transaction involving the payment of a certain amount of money and the signing of certain papers to be followed by the delivery of the automobile. The officers did not see the money paid nor the papers signed in the defendants' office because they were secreted across the street. In substance, therefore, they acted only on information received from Swartz.

The general rule with respect to what constitutes the commission of an offense within the presence of an arresting officer is stated in McBride v. United States, 5 Cir., 284 F. 416, 419, as follows:

"Where an officer is apprised by any of his senses that a crime is being committed, it is being committed in his presence, so as to justify an arrest without warrant." See Garske v. United States, 8 Cir., 1 F.2d 620, 623.

Furthermore, even if it could be held that the arrest was authorized, in my opinion there was no legal authority for the agents' actions in seizing the defendants' money and papers in this case. Where a private citizen makes an arrest in a case of breach of the peace, it may be assumed that there is the incidental authority to search the arrested person for weapons or articles which may have some relation to the past or threatened continued offense. But counsel have cited no authority, and I know of none, that would authorize private citizens making an arrest to invade a person's home or office and search for and seize his private papers. It is easy to see that such an extension of the power of arrest given to a private citizen might lead to serious abuses and grave infringements of the right of other citizens to be free from unreasonable searches and seizures of their houses, papers and effects which is one of the most important rights of the citizen in the guarantee of his security as against not only other persons generally but particularly against the Government itself. Ordinarily such searches and seizures can legally be made only by officers of the law duly authorized and under the authority of a search warrant obtained from a magistrate after proper inquiry and supported by oath as to probable cause.

In this case the effort is made to justify the seizure as merely an incident of the arrest. But it is also the well established rule in criminal procedure that a search and seizure is not justified if the arrest was in reality merely a *pretext* for the search and seizure. I am satisfied from the evidence that this was the case here. The agents expected to make a case against the defendant. It appears that what they particularly wanted was to get possession of the $500 cash given by Swartz to Chodak, the numbers of the money having

---

[2] There is some authority seemingly to the effect that a peace officer may arrest for any misdemeanor committed in his presence though not constituting a breach of the peace (Russell Law of Crimes, Vol. 1, (7th Eng. Ed.) page 725) although a private citizen may not. And the Maryland cases apparently support this view. Baltimore and Ohio Railroad Co. v. Cain, 81 Md. 87, 100, 31 A. 801, 28 L.R.A. 688; Callahan v. State, 163 Md. 298, 301, 162 A. 856; Heyward v. State, 161 Md. 685, 692, 158 A. 897; Romans v. State, 178 Md. 588, 599, 16 A. 642, certiorari denied Id., 312 U. S. 695, 61 S.Ct. 732, 85 L.Ed. 1131; Md.Law Rev. Vol. V, p. 155.

previously been inspected by them, and they especially wished this as corroborative evidence of Swartz against Chodak. They also very naturally wished to obtain further documentary evidence regarding the particular transaction. But they did not even stop with the seizure of the few papers relating to the particular transaction, but also seized numerous other business papers belonging to the defendant, inferably to ascertain if there were other violations of the Regulations. As to this there was seemingly no real necessity for the illegal seizure as the Emergency Price Control Act furnishes sufficient authority to the O.P.A. agents to inspect the books and records of dealers in used cars subject to the Regulations.

I think on the facts the case is so plain that it needs no extended review of judicial decisions; but reference may be made to one that is particularly in point. In Henderson v. United States, 4 Cir., 12 F.2d 528, 51 A.L.R. 420, under somewhat similar facts, it was held that the defendant's arrest was not the primary purpose of the officers and the search and seizure could not be held reasonable as incidental to a lawful arrest.

The United States Attorney relies on Davis v. United States, supra, as authority for the seizure in this case. In my opinion the facts in the Davis case are so different from the instant case that it is clearly distinguishable. In that case the defendant proprietor of a gasoline filling station, by its agent, sold to O.P.A. agents gasoline without requiring the surrender of rationing coupons and above the ceiling price. Promptly thereafter the proprietor was placed under arrest and the agents demanded that he deliver to them the ration coupons which he had in his place of business. The defendant finally acceded to the demand but subsequently moved to suppress the evidence. It was pointed out in the majority opinion of the court by Mr. Justice Douglas that the coupons were not private, but public property subject to recall at any time by the Office of Price Administration and also subject to inspection by its agents. As it appears from the final paragraph in the opinion, the case finally turned on the question as to whether under all the circumstances the coupons were taken by the agents with the consent of the defendant. The District Court found there was this consent and the Supreme Court approved that finding under the particular facts of the case. The case did not turn upon the validity of an arrest by the agents.

█ For these reasons an order will be signed in both cases to suppress the evidence on the ground that it constituted an unreasonable search and seizure under the Fourth and Fifth Amendments. Indeed the United States Attorney candidly admitted at the hearing that the papers and documents other than the cash money should and would be voluntarily returned to the defendants, but in my opinion as the whole search and seizure was illegal the money must also be returned. Counsel can submit the appropriate orders. Of course nothing in this opinion is intended to discuss or reflect upon the legal or factual merits of the charges made in the informations.