## McKNIGHT et al. v. UNITED STATES.
### No. 10163.

United States Court of Appeals
District of Columbia Circuit.

Argued March 15, 1950.

Decided June 28, 1950.

Curtis P. Mitchell, Washington, D. C., with whom B. Dabney Fox, J. Franklyn Bourne, and Frank D. Reeves, all of Washington, D. C., were on the brief, for appellants.

Joseph M. Howard, Assistant United States Attorney, with whom George Morris Fay, United States Attorney, and Arthur J. McLaughlin, Assistant United States Attorney, were on the brief, for appellee.

Before EDGERTON, BAZELON, and FAHY, Circuit Judges.

EDGERTON, Circuit Judge.

The appellants were convicted of carrying on a lottery known as the numbers game. They urge several points but we think only one requires discussion.

In 1948 police repeatedly trailed appellant McKnight over a regular route in Washington and had reason to believe he was a numbers "pick-up" man. Until September 29 they always lost him in traffic before he reached the end of his route. On that day, for the first time, they saw him enter a house at 910 Kent Place. The next day they got a warrant for his arrest, and also a warrant to search a house on Euclid Street. They got no warrant to search the house on Kent Place, apparently because they did not know enough about it.

Later in the same day a "raiding squad" waited near the Kent Place house while other officers trailed McKnight over his regular route. In approaching the house McKnight walked past an officer who was stationed in the street to signal the raiding squad when he entered the house. As the trial judge said, the officers "could have arrested him right then and there," in the street. But, as the government's brief concedes, "they purposely refrained from arresting him in the street * * *. The officers were given orders not to arrest McKnight until he had entered the house at 910 Kent Place; their object was to en-

ter the house to arrest McKnight and incidentally to seize 'any articles connected with the numbers game that were connected with McKnight in the arrest'."

When the members of the raiding squad got the signal that McKnight had entered the house they knocked, waited, heard a scuffle, and broke in. They arrested appellants McKnight, Washington, and King. They searched the whole house and seized numbers slips, a record of a numbers bet an officer had made with appellant Buxton in the Euclid Street house, and marked money he had handed her there. Everything seized was in plain sight, on tables in the second-floor room where McKnight was found and arrested.

Buxton moved to suppress certain evidence seized in the Euclid Street house. The other appellants moved to suppress the evidence seized in the Kent Place house. All these motions were overruled and all the seized evidence was admitted. The appellants were tried jointly and convicted.

 Apart from the fact that here as in the Accarino case[1] the officers failed to make known the cause of their demand for entry, the Kent Place facts come to this. The police planned to and did reject a convenient present opportunity to make a lawful arrest in a public street and, without a search warrant or enough information to get one, broke into a house in order to seize evidence they hoped to find there. They found it and seized it. We think this a plain violation of the prohibition in the Fourth Amendment of the Constitution against unreasonable searches and seizures. The government argues that what it aptly calls a "police strategem", waiting until McKnight was in a locked house before arresting him, justified the police in breaking into the house in order to arrest him and seize evidence. We think this untenable. "The right to break open a door to make an arrest requires something more than the mere right to arrest."[2] The government concedes that even when officers have a warrant of arrest they may not break

open doors unless there is some degree of necessity. To execute the warrant for McKnight's arrest there was no necessity to break open doors; or, what comes to the same thing for legal purposes, none but what the officers themselves created. As in the case of Accarino, "It would appear that the officers deliberately let him get to his own front door before they attempted to approach. If thereafter there was a semblance of emergency requiring the breaking of the door, it was created by the officers."[3] Neither policemen nor private citizens can justify breaking into a house, or other violence, by deliberately creating an alleged necessity for it. Since McKnight's arrest was accomplished by a needless and violent invasion of a private house, it was illegal, particularly since the real purpose of the invasion was not an arrest but a search.

 The Supreme Court has specifically held that "An arrest may not be used as a pretext to search for evidence." United States v. Lefkowitz, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877, 82 A.L.R. 775. In upholding the search in the Harris case the Court pointed out that it was not "a case in which law-enforcement officers have entered premises ostensibly for the purpose of making an arrest but in reality for the purpose of conducting a general exploratory search for merely evidentiary materials tending to connect the accused with some crime." Harris v. United States, 331 U.S. 145, 153, 67 S.Ct. 1098, 1102, 91 L.Ed. 1397. It is settled law that "when it appears, as it does here, that the search and not the arrest was the real object of the officers in entering upon the premises, and that the arrest was a pretext for or at the most an incident of the search," the search is not reasonable within the meaning of the Constitution. Henderson v. United States, 4 Cir., 12 F.2d 528, 531, 51 A.L.R. 420.

 In the recent Rabinowitz case the Supreme Court said: "The relevant test is * * * whether the search was reason-

---

1. Infra note 2.
2. Accarino v. United States, 85 U.S.App.D.C. 395, 179 F.2d 456, 464. The officers had no warrant for the arrest of Accarino.
3. Ibid.

able. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case." United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435. The Court there sustained the reasonableness of a peaceable search and seizure with an arrest warrant but without a search warrant, because of five circumstances. The first two were: "(1) the search and seizure were incident to a valid arrest; (2) the place of the search was a business room to which the public, including the officers, was invited * * *." 339 U. S. at pages 63–64, 70 S.Ct. at page 434. The Kent Place seizure lacked these circumstances. In the Rabinowitz case the police neither rejected a convenient opportunity to make a lawful arrest in a public street, nor broke into a house in order to seize evidence they hoped to find there. Even if McKnight's arrest were legal, it would not legalize the seizure of evidence found in the house, since the arrest was incident to the seizure and not the seizure to the arrest. To call this seizure incident to this arrest is like saying that cashing a check is incident to writing it. Means are incident to ends, not ends to means.

It is not clear that any of the appellants would have been convicted without the Kent Place evidence. In our opinion that evidence should have been suppressed. It follows that all the convictions should be reversed. McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153.

Reversed.