**UNITED STATES of America**

v.

**Frank KOWAL.**

**Crim. No. 6696.**

United States District Court
D. Rhode Island.

July 12, 1961.

**402**

Raymond J. Pettine, U. S. Atty., Providence, R. I., Moses Kando, Asst. U. S. Atty., Pawtucket, R. I., for plaintiff.

Charles A. Curran, Providence, R. I., for defendant.

DAY, District Judge.

This is a criminal information wherein the defendant is charged with having engaged in the business of accepting wagers as defined in 26 U.S.C.A. § 4421 without having paid the special occupational tax in violation of 26 U.S.C.A. §§ 7203, 7262 and failing to register with the District Director of Internal Revenue, in violation of 26 U.S.C.A. § 7272. The violations charged are alleged to have occurred on or about November 18, 1960.

The matter is now before me upon the defendant's motion that all personal property seized by police officers during a search by them of the defendant's watch repairing shop at 225 Washington Street, West Warwick, Rhode Island, on November 18, 1960, be suppressed and declared by me to be inadmissible in evidence in any trial of the instant criminal information.

In support of his motion, the defendant contends that the search warrant, issued by the clerk of the District Court for the Fourth Judicial District of the State of Rhode Island on November 18, 1960, pursuant to which, he says, said search and seizure was made was clearly invalid and hence said search and seizure was unreasonable and in violation of the Fourth Amendment to the Constitution of the United States.

At the conclusion of the hearing on the instant motion the Government conceded that said search warrant was invalid. In so doing, the Government is on sound ground. It was clearly invalid, and I would so rule if called upon to do so. The Government's concession removes this issue from the case.

But the Government contends vigorously that said personal property ought not to be suppressed as evidence or declared inadmissible in evidence because (1) said personal property was seized as an incident to a valid arrest of the defendant, and (2) the defendant consented to the search of said premises which re-

sulted in the discovery and seizure of said personal property.

The evidence adduced at the hearing on the instant motion may be briefly summarized as follows: during the afternoon of November 18, 1960, Captain Arthur J. Newton, of the Rhode Island State Police, received information from a special agent of the Intelligence Division of the Internal Revenue Service that the defendant was selling lottery tickets; that upon receipt of this information, he, the special agent, and other members of his department went to the defendant's watch repair shop at 225 Washington Street, West Warwick, Rhode Island, arriving at said shop between 3:30 o'clock p. m. and 4:00 o'clock p. m.; that the shop was closed; that later in the afternoon he talked with an individual who admitted he had been selling "football parlays" tickets for the defendant who would supply him with the money to "pay off" the holder of any winning ticket.

Later in the afternoon, at about 5:40 o'clock p. m., Captain Newton instructed his subordinate, Corporal Robert X. Matthews, to apply to the District Court of the Fourth Judicial District of the State of Rhode Island for the issuance of a search warrant to search the defendant's place of business at said 225 Washington Street "for gambling implements known as 'Lucky Football Parlays' " and to notify him as soon as the warrant was issued. It appears that the warrant was issued shortly thereafter and that Corporal Matthews reached Captain Newton at a restaurant where he was having his dinner and advised him of its issuance, and of his intention to bring the warrant to the premises at 225 Washington Street. Upon completing his meal, Captain Newton, together with two other police officers and a representative of the Internal Revenue Service, proceeded to the defendant's shop, arriving there about 7:00 o'clock p. m.

On this occasion the shop was lighted and the door thereto was unlocked. The evidence established that the shop is a one room affair with show cases for the display of watches and a partition extending the width of the shop, creating a "back room" therein, to which there was an open door-way. Captain Newton testified that upon his party entering the shop there was no one in the front portion thereof which was open to the public, that there was no one in sight, that he proceeded to said open door-way leading to the rear portion of the shop, that he stood in said door-way, looked to his right, and observed the defendant, who was seated at a bench adjoining said partition wall, throw a slip of paper on the floor. According to his testimony he then entered said rear portion of the shop, behind said partition, disclosed his identity to the defendant, picked up said slip of paper, examined it and discovered it to be a football parlay ticket, and then advised the defendant that he was under arrest for having had it in his possession. He further testified that he then said to the defendant, "We are going to look around and search the place. Do you mind?" and that the defendant replied, "No, go right ahead."

Under cross-examination Captain Newton admitted that before entering said premises he knew said search warrant had been issued and that he went into the premises only after he learned that Corporal Matthews had the warrant in his possession, and was en route to said premises, and he also admitted that he told the defendant, after his arrest, that he had a warrant to search the premises.

The evidence further discloses that Corporal Matthews arrived at the premises after Captain Newton and his companions had entered; that he participated in the search of the premises, and that he signed and made a legal return of said warrant, as required, which recited that "pursuant to within warrant" he had made search of the premises described therein and had seized and taken possession of the personal property described in the list attached thereto. Under cross-examination he testified that every article taken by the police officers from said premises was set forth in the list attached to said return.

At the time Captain Newton and his companions entered said premises none of them had a warrant for the arrest of the defendant. In fact, no such warrant had been issued. It is manifestly clear that they entered said premises to search for evidence to connect the defendant with the commission of a crime, and not to arrest him. Assuming, without deciding that defendant's arrest upon the charge stated by Captain Newton was valid, it cannot sustain the search and seizure made in this case. It is generally held that where, as here, the search and not the arrest was the real object of officers entering upon one's premises and that the arrest was a pretext for or at most an incident to the search, the search is not reasonable within the meaning of the Fourth Amendment to the Constitution. Jones v. United States, 1958, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed. 2d 1514; Lee v. United States, 1956, 98 U.S.App.D.C. 97, 232 F.2d 354; Drayton v. United States, 5 Cir., 1953, 205 F.2d 35; McKnight v. United States, 1950, 87 U.S.App.D.C. 151, 183 F.2d 977; Worthington v. United States, 6 Cir., 1948, 166 F.2d 557; Henderson v. United States, 4 Cir., 1926, 12 F.2d 528, 51 A.L.R. 420; United States v. Lassoff, D.C.Ky.1957, 147 F.Supp. 944; United States v. Pollack, D.C.N.J.1946, 64 F.Supp. 554; United States v. Sully, D.C.N.Y.1944, 56 F.Supp. 942.

In Jones v. United States, supra, the Supreme Court said at page 499 of 357 U.S., at page 1257 of 78 S.Ct.:

"These contentions, if open to the Government here, would confront us with a grave constitutional question, namely, whether the forceful nighttime entry into a dwelling to arrest a person reasonably believed within, upon probable cause that he had committed a felony, under circumstances where no reason appears why an arrest warrant could not have been sought, is consistent with the Fourth Amendment. But we do not consider this issue fairly presented by this case, for the record fails to support the theory now advanced by the Government. The testimony of the federal officers makes clear beyond dispute that their purpose in entering was to search for distilling equipment, and not to arrest petitioner. * * * "

In Lee v. United States, supra, where the Government undertook to justify the seizure as an incident to an arrest, the Court held at page 355 of 232 F.2d:

" * * * The police had gone to appellant's apartment with the purpose of checking on the tip from the 'reliable source' that the guns were there, and upon verifying that tip they arrested appellant. A number of courts have held in similar circumstances that such a search is not incident to the arrest, but rather the arrest is in truth incident to the search. United States v. Pollack, D.C.D.N.J., 64 F.Supp. 554, 558; United States v. Sully, D.C.S.D.N.Y., 56 F.Supp. 942; Henderson v. United States, 4 Cir., 12 F.2d 528, 51 A.L.R. 420; Cf. McKnight v. United States, 87 U.S.App.D.C. 151, 183 F.2d 977; United States v. McCunn, D.C.S.D.N.Y., 40 F.2d 295; United States v. Setaro, D.C.D. Conn., 37 F.2d 134. And of course the search cannot be justified by what it turned up. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520."

In McKnight v. United States, supra, in holding the search and seizure invalid, the Court said at page 979 of 183 F.2d:

" * * * Even if McKnight's arrest were legal, it would not legalize the seizure of evidence found in the house, since the arrest was incident to the seizure and not the seizure to the arrest. To call this seizure incident to the arrest is like saying that cashing a check is incident to writing it. Means are incident to ends, not ends to means."

And in Henderson v. United States, supra, the Court in holding the search to be illegal, said at page 531 of 12 F.2d:

" * * * And when it appears, as it does here, that the search and not the arrest was the real object of the officers in entering upon the premises, and that the arrest was a pretext for or at the most an incident of the search, ought such search be upheld as a reasonable one within the meaning of the Constitution? Manifestly not."

■ Finding as I do that the object of the police officers in entering said premises was to search for evidence connecting the defendant with the commission of crime and that his arrest was merely incidental to their search, I hold that said search was unreasonable and violated the Fourth Amendment unless it can be fairly said that the defendant consented to the search, as contended by the Government.

■ On this issue the burden of proof rests upon the Government. And where the defendant is under arrest, as here, that burden is particularly heavy. Rigby v. United States, 1957, 101 U.S.App.D.C. 178, 247 F.2d 584; Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649; United States v. Wallace, 1958, D.C.D.C., 160 F.Supp. 859; United States v. Kidd, 1958, D.C.La., 153 F. Supp. 605; United States v. Gross, 1956, D.C.N.Y., 137 F.Supp. 244.

In Rigby v. United States, supra, the rule is stated at page 585 of 247 F.2d as follows:

"Quite apart from the burden normally devolving upon the accused to demonstrate alleged illegality in the procurement of evidence, we have pointed out that if the Government relies upon consent and alleges the absence of intimidation and duress 'it has the burden of convincing the court that they are in fact absent.' * * * "

In Judd v. United States, supra, the Court states the rule at page 650 of 190 F.2d:

"Searches and seizures made without a proper warrant are generally to be regarded as unreasonable and violative of the Fourth Amendment. True, the obtaining of the warrant may on occasion be waived by the individual; he may give his consent to the search and seizure. But such a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; United States v. Kelih, D.C.S.D.Ill.1921, 272 F. 484. The Government must show a consent that is 'unequivocal and specific' (Karwicki v. United States, 4 Cir., 55 F.2d 225, 226), 'freely and intelligently given.' Kovach v. United States, 6 Cir., 54 F.2d 639 * * *

"This burden on the Government is particularly heavy in cases where the individual is under arrest. Nonresistance to the orders or suggestions of the police is not infrequent in such a situation; true consent, free of fear or pressure, is not so readily to be found. United States v. Novero, D.C., 58 F.Supp. 275; United States v. McCunn, D.C.S.D. N.Y.1930, 40 F.2d 295. * * * * "

■ The only testimony bearing upon the defendant's consent to said search and seizure was extremely brief. According to Captain Newton, he said to the defendant, "We are going to look around and search the place. Do you mind?" and the defendant is claimed to have replied, "No, go right ahead." Advised as he was while under arrest that the police officers intended to make the search, it would logically appear to him that his objection would avail him nothing and that it would be futile for him to object. In addition, if the defendant had consented unequivocally and freely to said search, I am unable to understand why Captain Newton deemed it necessary, almost immediately after his arrest, to advise him that he had a search

warrant and intended to search said premises. Moreover, if such an unequivocal consent had been given by the defendant, there was no occasion to sign and file the legal return to said District Court stating therein that the search had been made pursuant to said warrant. Considering all of the evidence on the issue of consent and the logical and reasonable inferences to be drawn therefrom, I conclude that the Government has failed to establish by the required degree of proof that the defendant consented to said search. I also conclude that said search and seizure was made pursuant to said search warrant which the Government now concedes was invalid.

A search which is illegal when it starts does not become legal because it is successful. United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Byars v. United States, 1927, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520. This rule is clearly stated in United States v. Di Re, supra, at page 595 of 332 U.S., at page 228 of 68 S.Ct. where the Court said:

> "The Government's last resort in support of the arrest is to reason from the fruits of the search to the conclusion that the officer's knowledge at the time gave them grounds for it. We have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success."

It is now the well settled rule that articles obtained as the result of an unreasonable search and seizure are inadmissible in evidence against a defendant over his timely objection in a federal criminal trial. Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed. 2d 1669; Byars v. United States, supra; McGinnis v. United States, 1955, 1 Cir., 227 F.2d 598.

Since said search and seizure was made pursuant to an invalid search warrant and was illegal, I conclude that the articles seized during said search, and described in the list attached to the return made on said search warrant, are inadmissible in evidence in the trial of this case. The defendant's motion is granted. An appropriate order will be entered.