UNITED STATES of America,
Plaintiff-Appellant,

v.

John W. HARRIS, Defendant-Appellee.

No. 15033.

United States Court of Appeals
Sixth Circuit.

Aug. 8, 1963.

William H. Merrill, Asst. U. S. Atty., Detroit, Mich. (Lawrence Gubow, U. S. Atty., Milton J. Trumbauer, Jr., Asst. U. S. Atty., on the brief), for appellant.

H. Donald Garfinkle, Detroit, Mich. (Harris, Stein & Hooberman, Detroit, Mich., on the brief), for appellee.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and BOYD, District Judge.

CECIL, Chief Judge.

John W. Harris, defendant-appellee, was indicted in the Eastern District of Michigan, Southern Division, on a charge of receiving, concealing and having in his possession on January 31, 1962, approximately 7.61 grams of heroin, in violation of Section 174, Title 21, United States Code. A motion and an affidavit to suppress evidence were filed on behalf of the defendant-appellee. The appellant and appellee will be referred to as the government and defendant, respectively.

The District Judge upon hearing evidence and oral arguments of counsel denied the motion. Counsel for the defendant petitioned for a rehearing, further evidence was submitted to the court and the motion to suppress evidence was sustained. The government appealed.

The event which led to the indictment of the defendant occurred on January 31, 1962. On that date at about five-thirty p. m. Connie DeBiasi, a treasury agent assigned to the Bureau of Narcotics, received a telephone call at the office of the Bureau in the federal building at Detroit from a special employee

of the Bureau. According to the testimony a special employee is a person who is himself involved in narcotic traffic and is used by the Narcotics Bureau to secure information of violations of the narcotic laws by other persons. Mr. DeBiasi had previously worked with this special employee and considered him reliable.

The special employee told Mr. DeBiasi that he had just left the apartment of John Harris, known to him as Honey Boy, and that Honey Boy had a quantity of bulk narcotics which he was putting into capsule form. He said that Honey Boy was trafficking in narcotics and that there was a constant flow of people in and out of the apartment. He further said that upon completion of capping the bulk narcotics, Honey Boy would likely move his "stash" (the narcotics) to some other location. The defendant's apartment was apartment No. 17, and located at 296 Warren street in the city of Detroit.

Mr. DeBiasi made no effort to get a search warrant. He and seven other agents went immediately to the apartment of the defendant. The apartment was on the second floor. Agents DeBiasi and David took a position at a front door marked "17" opening into a hall, agents Howard, Irvin and DeFaugh were stationed at another door opening from a bed room into the same hall, and agents Marquardt and Jenits were stationed at another door opening from the living room. Another agent was stationed on the outside to watch for any evidence that might be thrown out of the window.

Mr. DeBiasi testified that he knocked and that the defendant partially opened the door. Mr. DeBiasi further testified that he told the defendant that they were police officers and that he was under arrest. The defendant attempted to slam the door shut but the agent forced it open pinning the defendant between the door and the wall of the living room. Simultaneously with agent DeBiasi's entrance he signalled the agents at the other hall door to force their entrance into the bedroom. This door was kicked in or otherwise broken in the process of entering. There was a chain on the door opened by the defendant which prevented the door from being fully opened. This chain was broken off of the door by the force applied by DeBiasi and his fellow agent.

Mr. DeBiasi testified that upon gaining entrance to the apartment he placed the defendant under arrest for possession of narcotics in violation of law. He said that after searching the defendant for weapons he took him to the kitchen and questioned him for ten or fifteen minutes concerning narcotics. The defendant denied during this interrogation and at the hearing on the petition for rehearing that he had any narcotics in his possession.

The agents made a complete search of the apartment which took about one hour. In about fifteen minutes after the entrance, agent Howard found between the open door of the apartment No. 17 and the wall of the living room a small white package containing approximately 31 pink capsules and also a gelatin capsule box containing approximately 154 capsules of suspected heroin. He took one capsule from each package and performed a field test with a Marquis reagent. He got a positive reaction which indicated that the substance of the capsules was heroin. By further search he found a small white dispensing envelope, the same as the one which contained the 31 capsules. This envelope had a notation "one half" marked on it.

Agent Howard testified that he showed the defendant the empty white envelope and the one containing the 31 capsules and asked him if these were the containers in which he purchased the bulk narcotics. He said the defendant answered in the affirmative. The defendant was taken into custody and Bertha Cummings, who was in the apartment at the time of the search, was also taken into custody. She was kept in jail over night and released the following morning.

The defendant and Bertha Cummings both testified that they did not hear any

knocking before the forcible entry. They also testified that prior to the entrance of the agents they did not hear them identify themselves as police and that they did not hear them place the defendant under arrest.

In sustaining the motion to suppress the evidence the trial judge found from the evidence that the search was not an incident of arrest, but that it was the principal reason for the officers going to the defendant's apartment.

The government claims that the agents had reasonable ground to believe that the defendant had committed or was committing, at the time of the entrance into his apartment, a violation of law relating to narcotic drugs and that they were empowered to make an arrest without a warrant. Section 7607(2), Title 26, U.S. C. The government claims that it logically follows that if the arrest of the defendant were valid, the search of the premises was incidental to the arrest and also valid.

It is well established that a valid search of premises under control of an arrested person may be made as an incident of a valid arrest. Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145; Harris v. United States, 331 U.S. 145, 151, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Wilson v. Schnettler, 365 U.S. 381, 383, 81 S.Ct. 632, 5 L.Ed.2d 620.

■■ An arrest may not be used as a pretext or subterfuge for making a search of premises without a search warrant where ordinarily one would be required under the Fourth Amendment.[1] If, in fact, the primary purpose of forcibly entering a person's home is to search for evidence with which to convict him of crime, the evidence so obtained is not admissible in court. United States v. Lefkowitz, 285 U.S. 452, 467, 52 S.Ct. 420,

76 L.Ed. 877; Harris v. United States, 331 U.S. 145, 153, 67 S.Ct. 1098, 91 L. Ed. 1399; Abel v. United States, 362 U.S. 217, 225–26, 80 S.Ct. 683, 4 L.Ed.2d 668; Jones v. United States, 357 U.S. 493, 500, 78 S.Ct. 1253, 2 L.Ed.2d 1514; Worthington v. United States, 166 F.2d 557, 566, C.A.6; Taglavore v. United States, 291 F.2d 262, 265, C.A.9. See also Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; Henderson v. United States, 12 F.2d 528, C.A.4; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 1635, 10 L.Ed.2d 726.

■ All of the agents of the Narcotics Bureau who testified said that they went out to the defendant's apartment for the purpose of arresting him for violating the narcotics laws. The real purpose of the agents must be determined from all of the facts and circumstances surrounding the arrest of the defendant and the search of his apartment. The court is not bound to accept the purpose as stated by the agents as controlling.

The record as a whole supports the conclusion of the trial judge that the search was the principal reason for the agents going to the apartment of the defendant. The judge gave three reasons as a basis for his determination, viz., 1. That the defendant was on parole and if arrest was the only purpose of the agents, they could have had him arrested by his parole officer; 2. The concern of the agents was to prevent the defendant from trafficking in narcotics; 3. Once the defendant was apprehended he was not immediately removed from the premises but was held for approximately fifteen minutes until the search revealed evidence of narcotics.

The facts that the defendant was on parole and that parole officers were not called to make an arrest are of no consequence in this case. The elapse of time between his apprehension and the discovery of the evidence is not a deciding

---

[1] "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. Amend. IV.

factor in this case. See Harris v. United States, 331 U.S. 145, 149, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 339 U.S. 56, 59, 70 S.Ct. 430, 94 L.Ed. 653; Abel v. United States, 362 U.S. 217, 223, 80 S.Ct. 683, 4 L.Ed.2d 668.

The participants in this arrest and search were agents of the Narcotics Bureau. It was their duty to prevent traffic in narcotics which they must accomplish largely through arrest and conviction of violators of the narcotics laws. They knew that successful prosecution was virtually impossible without physical evidence. On January 4th preceding this arrest the agents had received information from the same special employee of violation of the narcotics laws by this same defendant in the same apartment. On that occasion federal agents accompanied by police of the Detroit Narcotics Bureau made a forcible entrance into the apartment, searched it and found no evidence of narcotics. They took the defendant to jail but released him the following morning without making any charge against him.

The manner of placing the agents at the entrances and the way Mr. DeBiasi signalled the men at the bed room door to enter as he gained entrance and knew the defendant was just inside the door is inconsistent with a primary purpose of arrest. If arrest had been the primary purpose of the agents in going to the apartment, there would have been no necessity for the three agents to forcibly enter the bed room door. If they had been placed there to prevent the defendant's escape through that door, certainly they could have caught him on the way out.

The defendant had a large "stash" of narcotics. Apparently, the agents of the bureau had had him under surveillance for a long time. He was a prize catch. Time was of the essence and it was not convenient or practical to get a search warrant. There was a strong urge on the agents to make a case against this defendant but we cannot permit the law to be circumvented by expediency.

To give sanction to a search such as was made in this case, would virtually nullify the provision of the Fourth Amendment that, "The right of the people to be secure in their persons, houses, * * * against unreasonable searches and seizures, shall not be violated, * *."

We are not unmindful of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, but the facts in this case are different. Here we have determined that a forcible entry was made into a man's home by officers without a search warrant and that the search was the primary motive of the officers in gaining entrance into the home. In Draper the search was incidental to an arrest. The question of whether the arrest was a pretext or subterfuge for searching the person of Draper without a warrant was not before the Court.

We conclude that the District Judge was correct in finding that the search of the defendant's apartment was the primary purpose of the agents in going to the apartment and making an arrest. In arriving at this conclusion, we establish no new principle of law. The question before the District Judge was a factual one to be decided solely on the particular facts of the case before him. We are of the opinion that the facts substantiate the trial judge's conclusion and we will not disturb it.

The judgment of the District Court is affirmed.

BOYD, District Judge (dissenting).

I must respectfully dissent. The majority opinion invokes as controlling in this case the principle that an arrest may be neither pretext nor subterfuge for a search without a warrant. With this legal principle in mind the instant case is quite different on its facts from any of the cases cited for the principle by the majority. Most of the cited cases were featured by one of four characteristics. There was either a general exploratory search as evidenced by ruthless and indiscriminate seizure of unoffending items, United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 and Go-Bart

Importing Company v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; or an arrest for one offense with a search for evidence of another, Abel v. United States, 362 U.S. 217, 80 S.Ct. 683; 4 L.Ed. 2d 668, and Taglavore v. United States, 291 F.2d 262 (C.A.9); or an arrest without probable cause, Worthington v. United States, 166 F.2d 557 (C.A.6); or a search preceding the arrest, Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 28 L.Ed.2d 154. None of these situations is here presented. The two remaining cases cited by the majority are Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, and Henderson v. United States, 12 F.2d 528 (C.A.4). In the Harris case the principle was recognized, but the search in that case was found to be a valid search, specific in nature and incidental to a lawful arrest. I so view the search in this case. The Court, in the Henderson case, finding the arrest therein a mere pretext, relied to some extent upon the failure of the officers to procure an arrest warrant although there was ample time for such procurement. My brethren do not seriously question the presence of probable cause for the within arrest. It also appears to be by them recognized that the arrest was made in an atmosphere of emergency, calling for prompt action by the law enforcement officers. The District Judge assailed the subjective intent of the arresting officers upon grounds unacceptable to the majority. The majority here affirms, however, supplanting the District Judge's reasons for discountenancing the intent and purpose of the officers with new cloth, which I consider to be as porous as the old.

If judicial scrutiny is exercised with sufficient ardor, a sinister coloration can usually be found to attend an arrest without a warrant when a search incident thereto discloses the means by which the offense warranting arrest was committed and the offense is *possession* of offending property. Without discovery of the offending item or items there is no case. I am persuaded that there has been an excess of judicial scrutiny in this instance.

In a case such as this where there is no evidence of a general exploratory search, no evidence of an arrest for one offense and search for evidence of another, and no evidence of a search preceding arrest, the most readily available and most reasonable indication of sham arrest is the absence of probable cause for the arrest. See Ker v. California, 374 U.S. at p. 43, 83 S.Ct. at p. 1634, Note 14. I detect no lack of probable cause under the undisputed facts of this case. The search here complained of was in my opinion clearly valid as incident to a lawful arrest. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.