194 So.2d 40 (1967)
Charles Edmond O'NEIL, Appellant,
v.
The STATE of Florida, Appellee.
No. 66-240.
District Court of Appeal of Florida. Third District.
January 24, 1967.
*41 Robert L. Koeppel, Public Defender and Phillip A. Hubbart, Asst. Public Defender, for appellant.
Earl Faircloth, Atty. Gen., and Barry N. Semet, Asst. Atty. Gen., for appellee.
Before HENDRY, C.J., and PEARSON and CARROLL, JJ.
CARROLL, Judge.
The question presented in this case is whether the evidence upon which the appellant was convicted of possession of a narcotic drug was the fruit of an unlawful search and seizure. We hold that it was, and reverse.
The record discloses the facts and circumstances leading up to and at the time of the arrest and search. Burt Bernstein, a Miami Beach detective who for five years had been engaged in investigation and apprehension of narcotics law violators, observed Charles Edmond O'Neil associating with narcotic addicts. The detective then had O'Neil under investigation for narcotics violation for "two or three months." During that time Bernstein ascertained that O'Neil previously had been arrested in Miami Beach on a drunk charge, in connection with which he had been fingerprinted and his prints forwarded to the F.B.I. in Washington. Through communications based thereon, Bernstein learned that O'Neil's record included a felony conviction in Massachusetts. An ordinance of the City of Miami Beach required timely registration there of convicted felons. It was determined that O'Neil had failed to so register. On Bernstein's affidavit a warrant was issued for the arrest of O'Neil for failure to register as a felon.
O'Neil resided in a hotel in Miami Beach. The detective Bernstein did not have facts upon which to obtain a search warrant to search his room in the hotel, and so stated in his testimony. Armed with the warrant for O'Neil's arrest as issued, Bernstein and another detective John Umano, also working on narcotics law violations, went to O'Neil's hotel on a certain evening and waited for him. By prearrangement between the officers the arrest was not to be made until O'Neil entered his room. O'Neil returned at 11:30 P.M. At that time Umano was in the lobby and Bernstein was stationed in the hall which led to the room occupied by O'Neil. When O'Neil entered the hotel lobby a signal was passed between the officers signifying his presence. O'Neil sat down in the lobby for some time, then obtained his key and proceeded down the hall to his room. The detectives followed close behind. No effort was made to arrest O'Neil when he came into the hotel or while he remained in the lobby. When O'Neil arrived at his room and had opened the door and was stepping inside the detectives identified themselves as police officers and also entered. Bernstein testified he told O'Neil they wanted to talk to him. Umano *42 testified that as O'Neil was entering his room the detectives identified themselves and told him they had a warrant for his arrest. There is some conflict in the evidence as to whether the officers pushed their way in or were "invited" in. The officers testified their entry was made on an invitation by O'Neil to "come in."
The warrant relating to failure to register was served on O'Neil inside the room, and while Bernstein was filling in the return on the warrant the officers observed a spoon on a dresser. The spoon had a sediment in it and a small piece of cotton. Recognizing it as paraphernalia used by an addict in administering a narcotic drug, the officers seized the spoon and its contents as evidence, and O'Neil's arrest for possession of a narcotic drug followed. A subsequent chemical analysis showed the residue in the spoon and in the cotton was heroin. On that evidence O'Neil was convicted on the drug possession charge and was sentenced to two years confinement.
At O'Neil's trial a motion was made on his behalf to suppress the evidence as having been obtained on an unlawful search in violation of his constitutional rights. The motion was denied. On appeal O'Neil contends that ruling constituted reversible error.
It is clear that O'Neil's conviction depended on the evidence obtained on the search. When the detectives seized the spoon and confronted O'Neil with it, he made no incriminating statement, nor did he later confess guilt.
The reasonableness of the search is to be tested on the facts and circumstances, and in a case of this kind it is important to view the facts against the background of the total atmosphere of the case. So viewed it is apparent that the arrest was incident to the search, and that the search was not incident to the arrest. In our opinion the evidence in question should have been suppressed.
This is not the first time a matter of this kind has come before this court and been so decided. See Chapman v. State, Fla.App. 1964, 158 So.2d 578, 579-580, where the court said:
"An incidental search should be, as the term implies, incidental to the arrest. The primary purpose should be to arrest and the search should be purely incidental to it. An exploratory search is one in which the search is primary and the arrest is used as a pretext to justify the search.
"In the case of Henderson v. United States, 12 F.2d 528, 51 A.L.R. 420 (4th Cir.1926), the court stated:
`It is admitted that the government officers had no warrant either for the arrest of the defendant or for the search of his premises. There is no showing or contention that it was necessary to arrest defendant without a warrant to prevent his escape, and a careful consideration of the evidence leads irresistibly to the conclusion that the search of his dwelling was made, not as an incident of the arrest, but as the chief object which the officers had in view in entering upon his premises. Instead of the search being incidental to the arrest, therefore, the arrest was incidental to if not a mere pretext for the search. The question is whether a search made under such circumstances violates the constitutional rights of the defendant. We think that it does.
* * * * * *
`* * * And when it appears, as it does here, that the search and not the arrest was the real object of the officers in entering upon the premises, and that the arrest was a pretext for or at the most an incident of the search, ought such search be upheld as a reasonable one within the meaning of the Constitution? Manifestly not.'

*43 "See also Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514; McKnight v. United States, 87 U.S.App. D.C. 151, 183 F.2d 977 (1950); Worthington v. United States, 166 F.2d 557 (6th Cir. 1948); United States v. Chodak, 68 F. Supp. 455 (D.C.Md. 1946); United States v. McCunn, 40 F.2d 295 (S.D.N.Y. 1930)."
The point was similarly decided in McKnight v. United States, 1950, 87 U.S.App. D.C. 151, 183 F.2d 977, in which case the court said:
"The Supreme Court [of the United States] has specifically held that `An arrest may not be used as a pretext to search for evidence.' United States v. Lefkowitz, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877, 82 A.L.R. 775. * * * It is settled law that `when it appears, as it does here, that the search and not the arrest was the real object of the officers in entering upon the premises, and that the arrest was a pretext for or at the most an incident of the search,' the search is not reasonable within the meaning of the Constitution. Henderson v. United States, 4 Cir., 12 F.2d 528, 531, 51 A.L.R. 420."
On behalf of the state it is argued that the purpose in entering the room was to make an arrest; not to make a search. The facts and circumstances disclosed otherwise. The arrest could have been made before O'Neil went to his room. The plan, instead, not to arrest him until he was in his room, together with the fact that the officers were interested primarily in obtaining evidence of a narcotics offense which was foreign to the charge for which they held an arrest warrant, established the arrest as an incident to the search and that the search was not incident to the arrest. Chapman v. State, supra; McKnight v. United States, supra.
A second contention made by the state was that the search was lawful because O'Neil invited the detectives to enter. That contention is without merit here. This is so because the detectives entered O'Neil's room under color of office, announcing they had a warrant for his arrest. In that situation the statement by O'Neil to the officers to "come in" was not a consent for a search and seizure without a search warrant. Atz v. Andrews, 84 Fla. 43, 94 So. 329, 330-331; Collins v. State, Fla.App. 1962, 143 So.2d 700.
We also reject a further contention made by the state that because the evidence seized in O'Neil's room was lying in plain sight on his dresser, a search was not necessary and no search was made. Regardless of the fact that the evidence was not hidden, it was necessary to gain access to the room to find it. Discovery of evidence by looking around in a room or dwelling constitutes a search. There is no rule which permits an officer to enter a person's dwelling without a search warrant and seize evidence which may be found there unconcealed. Items of evidence which are easily found in a person's dwelling are as much the fruit of a search as those which can be found only by ransacking the place.
Accordingly, the judgment is reversed and the cause is remanded with direction that the defendant O'Neil be discharged.
Reversed and remanded.
PEARSON, Judge (concurring).
I concur in the opinion for the majority, but it should be noted that a police decision to arrest in a room rather than in a street or hotel lobby is not prima facie unreasonable. Many factors may enter into such a decision by police officers. The possibility of violence and resultant dangers to members of the public in the arrest of a known felon is one of these factors. Even though the police must make the decision as to where and when to arrest, they cannot exercise that power in a manner which is calculated to circumvent the citizens' right to be free from unreasonable searches and seizures. The appellate courts *44 should not substitute their judgment for that of the police by determining that an arrest should have been made at a different time or place; however, where the facts indicate that the delay in arresting a defendant was for the sole purpose of gaining an entrance to the premises under color of authority, the Constitution commands that the evidence shall not be used.